(No. 38952.—

STEVEN E. SUVADA *et al.* d/b/a F. & K. MILK SERVICE, Appellees, *vs.* WHITE MOTOR COMPANY, *et al.*—(BENDIX-WESTINGHOUSE AUTOMOTIVE AIR BRAKE COMPANY, Appellant.)

*Opinion filed May 20, 1965.—Rehearing denied Sept. 27, 1965.*

RUFF & GROTEFELD, of Chicago, (WILLIAM S. GROTE-FELD and JOHN E. GUY, of counsel,) for appellant.

RICHARD C. BLELOCH, of Chicago, (LEONARD M. RING, of counsel,) for appellees.

Mr. JUSTICE HOUSE delivered the opinion of the court:

"The subject of implied warranties on the sale of chattels has perplexed the Common Law Courts for a long time, and has been a source of many apparently contradictory decisions." (*Misner* v. *Granger,* 4 Gilm. 69.) This statement by Mr. Justice Caton in 1847 echoes down to us today as this case comes before us on a certificate of importance from the Second Division of the Appellate Court, First Judicial District. (Ill. Rev. Stat. 1963, chap. 110, par. 75(2)(a).) Specifically, the question presented is whether the manufacturer of a component part is liable to a subpurchaser for sums of money the subpurchaser has paid to settle claims against him by persons who were injured and whose property was damaged as a result of the defective condition of the component part.

The appeal is from an order dismissing certain counts of plaintiffs' complaint in which there is a finding that there is no just reason for delaying enforcement or appeal of the order. (Ill. Rev. Stat. 1963, chap. 110, par. 50(2).) Therefore, all facts well pleaded will be taken as true. The plaintiffs Steven Suvada and John Konecnik are partners engaged in the business of buying, selling and distributing milk in Cook County. On February 11, 1957, they purchased a used reconditioned tractor unit from defendant White Motor Company. The brake system for the tractor was manufactured by defendant Bendix-Westinghouse Automotive

Air Brake Company and installed by White. On June 24, 1960, the brake system failed and the tractor collided with a Chicago Transit Authority bus causing a number of injuries to the bus passengers and considerable damage to the bus and the plaintiffs' tractor-trailer milk truck.

On June 21, 1962, plaintiffs filed this action against White and Bendix to recover the costs they incurred in repairing their tractor-trailer unit, repairing the bus and in their settlement of personal injury claims by the bus passengers. Included in the damages for settling the personal injury claims are the costs of legal services and investigation.

The trial court held that plaintiffs had stated causes of action for damages to their tractor-trailer unit against White on the basis of breach of implied warranty and negligence and against Bendix on the basis of negligence, but dismissed the counts for damage to the bus, personal injury claims and expenses. On appeal by the plaintiffs the Appellate Court held that plaintiffs had stated causes of action for all elements of damage pleaded against White and Bendix on the basis of breach of an implied warranty. (*Suvada* v. *White Motor Co.* 51 Ill. App. 2d 318.) Only Bendix seeks review of this holding.

The theory advanced by Bendix is essentially: (1) That any warranty as to its product runs to White and that plaintiffs cannot recover for a breach of this warranty because they are not in privity with Bendix. (2) That any liability of Bendix to plaintiff must therefore be based on its negligence, but it cannot be held liable to plaintiff for the costs of settling the injury claims because: (a) If Bendix was solely negligent in manufacturing the brake system, then plaintiffs were not responsible for the accident and they acted as volunteers in settling the injury claims and the damage claim for the bus; (b) if, on the other hand, Bendix was negligent and plaintiffs were also responsible for the accident, it would be because plaintiffs were also

negligent; thus, Bendix and plaintiffs would be joint tort-feasors and plaintiffs cannot seek contribution from their joint tort-feasor.

"If there is any question of law which can truly be called characteristic of products liability litigation it is the question of privity of contract—that is, whether there can be recovery for injury caused by a product against a manufacturer or seller who had sold the product, where the person who suffered the injury was not a party to the sale and hence is not in privity of contract with the manufacturer or seller sought to be held liable." (1 Hursh, American Law of Products Liability, 510 (1961).) The history of the privity requirement in a negligence action and the broad exceptions to the "rule" have been stated so often that there is no need to repeat it. See Postilion, Products Liability: The Negligence Theory, 53 I.B.J. 562 (1965); Metzger, The Social Revolution in Products Liability, 49 I.B.J. 710 (1961); James, Products Liability, 34 Texas L. Rev. 192 (1955); Jeanblanc, Manufacturers' Liability to Persons Other Than Their Immediate Vendees, 24 Va. L. Rev. 1934 (1937); Feezer, Tort Liability of Manufacturers, 19 Minn. L. Rev. 752 (1935); Russel, Manufacturers' Liability to the Ultimate Consumer, 21 Ky. L.J. 388 (1933); Bohlen, Liability of Manufacturers to Persons Other Than Their Immediate Vendees, 45 L.Q. Rev. 343 (1949).

It is sufficient to point out that the privity requirement as enunciated in 1842 in *Winterbottom* v. *Wright*, 10 Mees. & W. 109, 152 Eng. Reprint 402, and the broad exceptions thereafter carved into the rule by such leading cases as *Thomas* v. *Winchester*, 6 N.Y. 397, 57 Am. D. 455; *Coughtry* v. *Globe Woolen Co.* 56 N.Y. 124, 15 A.R. 387, and *Langridge* v. *Levy*, 2 Mees. & W. 519, 150 Eng. Reprint 863, had become well established (see *Huset* v. *J. I. Case Threshing Machine Co.* (8th cir.) 121 Fed. 865) when the question was first presented in this State in 1912 in *Davidson* v. *Montgomery Ward & Co.* 171 Ill. App. 355. The

*Davidson* case adopted the "general rule" that a contractor, manufacturer or vendor is not liable (regardless of his negligence) to third parties who have no contractual relations with him. The three recognized exceptions to the rule requiring privity were also adopted, namely, (1) where the negligence of a manufacturer or vendor is with reference to an article imminently dangerous to human life or health, (2) where an owner's negligence causes injury to one invited on the premises, and (3) where one knowing the qualities of an article which are imminently dangerous to life or health sells the article without notice of these qualities.

In 1934 this court in *Rotche* v. *Buick Motor Co.* 358 Ill. 507, recognized the "general rule" requiring privity of contract in a negligence action against a manufacturer as well as the exception that no privity is required where the manufacturer's alleged negligence produces an article imminently dangerous to human life or health. The *Rotche* case approved and adopted the reasoning of the celebrated *MacPherson* v. *Buick Motor Co.* 217 N.Y. 382, 111 N.E. 1050, (1916) which had expanded the concept that imminently dangerous articles such as explosives, poisons and other things which in their normal operation are implements of destruction, to the concept that any article negligently manufactured, which is reasonably certain to place life and limb in peril, is a thing of danger.

We agree with the reasoning of the Massachusetts court in *Carter* v. *Yardley & Co.* 319 Mass. 92, 64 N.E.2d 693, 164 A.L.R. 559, where it observed: "The *MacPherson* case caused the exception to swallow the asserted general rule of nonliability, leaving nothing upon which that rule could operate. Wherever that case is accepted, that rule in truth is abolished, and ceases to be part of the law," (319 Mass. 92, 103, 64 N.E.2d 693, 700.) Implicit in *Lindroth* v. *Walgreen Co.* 407 Ill. 121, was the view that the general rule, rather than the exception to a so-called "general rule",

is that a manufacturer may be liable for injuries to a person not in privity with him and that such liability is governed by the same principles governing any action for negligence. (See *Gray* v. *American Radiator and Standard Sanitary Corp.* 22 Ill.2d 432; cf. *Watts* v. *Bacon & Van Buskirk,* 18 Ill.2d 226.) That defendant understood this to be the rule is shown in its reply brief when it stated "Where *negligence* is the basis of the action, let us not permit talk of privity, for it is neither necessary, nor proper." We now make explicit that which was implicit in *Lindroth,* lack of privity is not a defense in a tort action against the manufacturer.

In addition to the manufacturer, liability in tort for a defective product extends to a seller, (*Lindroth* v. *Walgreen Co.* 407 Ill. 121,) a contractor, (*Paul Harris Furniture Co.* v. *Morse,* 10 Ill.2d 28,) and a supplier, (*Watts* v. *Bacon & Van Buskirk,* 18 Ill.2d 226,) one who holds himself out to be the manufacturer, (*Lill* v. *Murphy Door Bed Co.* 290 Ill. App. 328,) the assembler of parts (*Rotche* v. *Buick Motor Co.* 358 Ill. 507) and the manufacturer of a component part. (*Gray* v. *American Radiator and Standard Sanitary Corp.* 22 Ill.2d 432.) Lack of privity of contract not being a defense in a tort action against the manufacturer, it is not a defense in an action against any of these parties.

This brings us to the question of the nature of the manufacturer's liability. As early as 1847 this court approved of the holding in *Van Bracklin* v. *Fonda,* (N.Y. 1815) 12 Johnson, 468, 7 Am. D. 339, that there is an implied warranty (strict liability) in the sale of food. (*Misner* v. *Granger,* 4 Gilm. 69.) Dean Prosser has traced the theory of strict liability in the sale of food to the year 1431. (Prosser, Assault on the Citadel, 69 Yale L.J. 1099.) In *Wiedeman* v. *Keller,* 171 Ill. 93, it was held that a seller of food is strictly liable for the unwholesome condition of the food he sold. That the imposition of strict liability for the

sale of unwholesome food was based solely on the ground of public policy was made clear when the court stated: "Where, however, articles of foods are purchased from a retail dealer for immediate consumption, the consequences resulting from the purchase of an unsound article may be so serious and may prove so disastrous to the health and life of the consumer that public safety demands that there should be an implied warranty on the part of the vendor that the article sold is sound and fit for the use for which it was purchased." 171 Ill. 93, 99.

Although this court has held that an action for breach of warranty is an action *ex contractu* and can only be maintained by a party to the contract, (*Paul Harris Funiture Co. v. Morse,* 10 Ill.2d 28,) we have recognized that privity of contract is not essential in an action for breach of implied warranty in the sale of food. (*Tiffin* v. *Great Atlantic and Pacific Tea Co.* 18 Ill.2d 48.) The Appellate Court has sanctioned actions for breach of warranty in a food case by a party not in privity with the seller or the manufacturer, on the ground that the implied warranty of the manufacturer or seller runs with the sale of the article. (*Welter* v. *Bowman Dairy Co.* 318 Ill. App. 305; *Patargias* v. *Coca-Cola Bottling Co.* 332 Ill. App. 117.) One author has listed twenty-nine different theories that have been advanced to justify an action for breach of warranty in the sale of food by a party not in privity with the seller or manufacturer. (Gillam, Products Liability in a Nutshell, 37 Ore. L. Rev. 119, 153-155 (1957).) We agree, however, with the forthright statement of the Texas court in *Decker & Sons* v. *Capps,* 139 Tex. 609, 617, 164 S.W.2d 828, 831-2, that "Here the liability of the manufacturer and vendor [of food] is imposed by operation of law as a matter of public policy for the protection of the public, and is not dependent on any provision of the contract, either expressed or implied." See *Wiedeman* v. *Keller,* 171 Ill. 93.

Recognizing that public policy is the primary factor

for imposing strict liability on the seller and manufacturer of food in favor of the injured consumer, we come to the crucial question in this case, namely, is there any reason for imposing strict liability in food cases and liability based on negligence in cases involving products other than food. Arguments advanced to support the imposition of strict liability in food cases have been: (1) The public interest in human life and health demands all the protection the law can give against the sale of unwholesome food. (*Wiedeman v. Keller,* 171 Ill. 93.) (2) The manufacturer solicits and invites the use of his product by packaging advertising or otherwise, representing to the public that it is safe and suitable for use. Having thus induced use of the product, the law will impose liability for the damage it causes. (*Patargias v. Coca-Cola Bottling Co.* 332 Ill. 117.) (3) The losses caused by unwholesome food should be borne by those who have created the risk and reaped the profit by placing the product in the stream of commerce. (See *Wiedeman v. Keller,* 171 Ill. 93.) Without extended discussion, it seems obvious that public interest in human life and health, the invitations and solicitations to purchase the product and the justice of imposing the loss on the one creating the risk and reaping the profit are present and as compelling in cases involving motor vehicles and other products, where the defective condition makes them unreasonably dangerous to the user, as they are in food cases.

The recent and often cited cases of *Henningsen v. Bloomfield Motors, Inc.,* (1960) 32 N.J. 358, 161 A. 2d 69; *Greenman v. Yuba Power Products, Inc.,* (1963) 59 Cal. 2d 57, 377 P.2d 897 and *Goldberg v. Kollsman Instrument Corporation,* (1963) 12 N.Y.2d 432, 191 N.E.2d 81 typify the increasing number of decisions which are extending the concept of strict liability to the manufacturers of products whose defective condition makes them unreasonably dangerous to the user or consumer. At the time Professor Noel wrote his article, Strict Liability of Manufacturers,

for the May 1964 issue of the American Bar Journal (50 A.B.J. 446) he listed cases from twenty different jurisdictions (50 A.B.J. 446, 449 n.15) as supporting the rule. While some of these decisions are not rendered by the highest court of the State, or are rendered by a Federal court noting the lack of authority in that State, on close examination are not clear cut on the matter, they nevertheless support his statement that "The decisions since 1960, * * *, particularly the ones in the Henningsen, Greenman and Goldberg cases, may well turn the tide [to strict liability] in the near future as to many kinds of products." (50 A.B.J. 446, 449.) More recent cases are collected in 1 Hursch, American Law of Products Liability, sec. 6.62 (Supp. 1965) and 1 Frumer & Friedman, Products Liability, secs. 16, 16A (Supp. 1964.)

Professor James and Dean Prosser in their influential articles, Products Liability, 34 Tex. L. Rev. 44 (1955), and Assault Upon the Citadel, 69 Yale L.J. 1099 (1960), respectively, gave a thorough and critical analysis to this whole area of the law and not only advocated the imposition of strict liability, but urged that such liability be based upon something other than the implied warranties of the commercial law. Professor James advocates development of "a warranty theory in products liability cases which is tailored to meet modern needs in that field," (34 Tex. L. Rev. 44, 228,) while Dean Prosser suggests, "If there is to be strict liability in tort, let there be strict liability in tort, declared outright, without an illusory contract mask." (69 Yale L.J. 1099, 1134.) The New Jersey court in *Henningsen* imposed strict liability on the theory of an implied warranty. The California court in *Greenman* arrived at the same result on the theory of strict liabiilty in tort. The New York court in *Goldberg* imposed liability on the theory of implied warranty while acknowledging that "strict tort liability" is a more accurate phrase.

In analyzing the basis for the imposition of strict lia-

bility Justice Traynor, speaking for the California court stated, "Although in these cases strict liability has usually been based on the theory of an express or implied warranty running from the manufacturer to the plaintiff, the abandonment of the requirement of a contract between them, the recognition that the liability is not assumed by agreement but imposed by law [citations] and the refusal to permit the manufacturer to define the scope of its own responsibility for defective products [citations] make clear that the liability is not one governed by the law of contract warranties but by the law of strict liability in tort. Accordingly, rules defining and governing warranties that were developed to meet the needs of commercial transactions cannot properly be invoked to govern the manufacturer's liability to those injured by its defective products unless those rules also serve the purposes for which such liability is imposed." (59 Cal. 2d 57, 63.) We agree.

We note that the views herein expressed coincide with the position taken in section 402A of the American Law Institute's revised Restatement of the Law of Torts approved in May 1964. The section provides:

"(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

> "(a) the seller is engaged in the business of selling such a product, and
> "(b) it is expected to reach the user or consumer in the condition in which it is sold.

"(2) The rule stated in subsection (1) applies although
> "(a) the seller has exercised all possible care in the preparation and sale of his product, and
> "(b) the user or consumer has not bought the product from or entered into any contractual relation with the seller".

(The rapid development of the law on this subject is typified by the development of section 402A. The original Restatement of Torts had no provision for strict liability. In April 1961, Tentative Draft No. 6 recommended adoption of a new section, section 402A, which recognized a seller's strict liability for food for human consumption. In April 1962, Tentative Draft No. 7 expanded the coverage of the section to products intended for intimate bodily use. Tentative Draft No. 10 applies to all products and expanded coverage to property damages as well as bodily harm.)

The Appellate Court imposed strict liability on the theory of an implied warranty and held that lack of privity between plaintiffs and Bendix is no defense. Bendix has argued that lack of privity is a defense and cites in support of its position section 2—318 of the Uniform Commercial Code. (Ill. Rev. Stat. 1963, chap. 26, par. 2—318.) That section provides, "A seller's warranty whether express or implied extends to any natural person who is in the family or household of his buyer or who is a guest in his home if it is reasonable to expect that such person may use, consume or be affected by the goods and who is injured in person by breach of the warranty. A seller may not exclude or limit the operation of this Section." It is argued that this section codifies the common-law requirement of privity in a breach-of-warranty action except as to those persons specifically excluded in the section and that this court has no power to enlarge the class of persons excluded from the privity requirement.

Our holding of strict liability in tort makes it unnecessary to decide what effect section 2—318 has on an action for breach of implied warranty. In *Rotche* v. *Buick Motor Co.* 358 Ill. 507, this court held that as an exception to the "privity rule" a manufacturer was liable for his negligence in making or assembling an imminently dangerous product even to remote users with whom he had no contractual relationship. In *Lindroth* v. *Walgreen Co.* 407 Ill. 121, the

exception was applied as the rule and privity was no longer necessary where the basis of the action was negligence. Today negligence is no longer necessary.

The argument that the abolition of privity and negligence in this type of case should come from the legislature is well answered by a paraphrase of our reply in *Molitor* v. *Kaneland Community Unit Dist.* 18 Ill.2d 11, "The doctrine of school district immunity [privity and negligence] was created by this court alone. Having found that doctrine to be unsound and unjust under present conditions, we consider that we have not only the power, but the duty, to abolish that immunity [doctrine]. 'We closed our courtroom doors without legislative help, and we can likewise open them.'" 18 Ill.2d 11, 25.

Bendix argues that the imposition of strict liability, in effect, requires it to guarantee both White's and Suvada's use of the brake system. Such liability does not, of course, make Bendix an absolute insurer. The plaintiffs must prove that their injury or damage resulted from a condition of the product, that the condition was an unreasonably dangerous one and that the condition existed at the time it left the manufacturer's control. See *Tiffin* v. *Great Atlantic and Pacific Tea Co.* 18 Ill.2d 48.

It is also argued that the rule of strict liability in tort should not apply to the maker of a component part. It appears that White did not make any change in the brake system manufactured by Bendix but merely installed it into the tractor unit. Under these circumstances we see no reasons why Bendix should not come within the rule of strict liability. See Comment q, section 402A, Tentative Draft No. 10, Restatement of the Law, Second, Torts (1964).

Bendix has devoted a considerable portion of its brief to the issue of whether plaintiffs have a right to be indemnified for the settlement made with the Chicago Transit Authority and the injured bus passengers. No question has

been raised as to the elements of damage or the fact that the claims were settled rather than litigated. Bendix takes the position rather that the plaintiffs were either volunteers or joint-feasors and that in either case they are not entitled to indemnification.

Plaintiffs allege that they were compelled to make the settlements. This negatives any question that they acted as volunteers. Plaintiffs' liability for damage to the bus and injuries to the bus passengers must, of course, be based on their negligence, as Bendix suggests. It does not follow, however, that plaintiff's negligence will, as a matter of law, as Bendix argues, prevent them from seeking indemnity from Bendix. Dean Prosser in the chapter of his book covering joint tort-feasors (Prosser, Law of Torts, chap. 8. 3d ed. (1964),) points out, "There is an important distinction between contribution, which distributes the loss among the tort-feasors by requiring each to pay his proportionate share, and indemnity, which shifts the entire loss from one tort feasor who has been compelled to pay it to the shoulders of another who should bear it instead. The two are often confused, and there are many decisions in which indemnity has been allowed under the name of 'contribution'. * * * The principle is not, however, limited to those who are personally free from fault. A similar rule has been applied to indemnity against a supplier of goods when a retailer or user of the goods incurs liability by reason of negligent reliance upon his proper care." (p. 278-280.) Indemnity here is not, however, premised on any theory of active and passive negligence. (To require proof that Bendix was actively negligent would be the antithesis of strict liability.) In the absence of any evidence it is unnecessary for us to further consider various alternatives which might affect plaintiff's right to indemnification.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*