(No. 46675.

JAMES A. PETERSON, Adm'r, *et al.,* Appellees, v. LOU BACHRODT CHEVROLET COMPANY, Appellant.

*Opinion filed June 2, 1975.*

18

GOLDENHERSH, J., dissenting.

Reno, Zahm, Folgate, Skolrood, Lindberg & Powell, of Rockford (Robert K. Skolrood, of counsel), for appellant.

Maynard & Brassfield, of Rockford (Eugene E. Brassfield, of counsel), for appellees.

McConnell, Kennedy, Quinn & Morris, of Peoria (Thomas B. Kennedy, Sr., and R. Michael Henderson, of counsel), for *amicus curiae* Illinois Retail Farm Equipment Association.

Giffin, Winning, Lindner, Newkirk, Cohen, Bodewes & Narmont, of Springfield, for *amicus curiae* Illinois Automotive Trade Association.

Gale S. Molovinsky, of Washington, D. C., for *amicus curiae* National Automobile Dealers Association.

MR. JUSTICE SCHAEFER delivered the opinion of the court:

On September 3, 1971, Maradean Peterson, age 11, and her brother, Mark Peterson, age 8, were struck by an automobile while they were walking home from school. Maradean Peterson died on the day of the accident, and

Mark Peterson suffered severe injuries, including the amputation of one of his legs. The automobile involved in the accident was a used 1965 Chevrolet. James A. Peterson, administrator of the estate of Maradean Peterson, and Mark Peterson, by James A. Peterson, his father and next friend, brought this action against the driver of the used car, its owners, and the defendant involved in the appeal, Lou Bachrodt Chevrolet Company.

The circuit court of Winnebago County dismissed two counts of the complaint and found that there was no reason to delay appeal from that judgment. (Ill. Rev. Stat. 1973, ch. 110A, par. 304(a).) The Appellate Court, Second District, reversed (17 Ill. App. 3d 690), and we granted leave to appeal.

One of the challenged counts sought recovery for the wrongful death of the daughter, the other for the injuries to the son. Each count alleged that the defendant, Lou Bachrodt Chevrolet Company, had sold the 1965 Chevrolet on June 11, 1971, in the ordinary course of business, and that at the time the automobile left the defendant's control it was defective and not reasonably safe for driving and operation in that:

> "(a.) A spring or springs in the left front wheel · braking system was missing at the time of its sale;
> (b.) One of the left rear brake shoes was completely worn out at the time of the sale;
> (c.) A part of the cylinder braking system in the left rear wheel was missing at the time of the sale."

It was alleged that the injuries and death were a direct and proximate result of the defective conditions.

Two issues are presented on this appeal: first, whether as a matter of law, strict liability extends to the seller of a used car and, second, whether a bystander who has been struck by a defective and unreasonably dangerous car may sue under a theory of strict liability. Our disposition of the first of these issues makes it unnecessary to consider the second.

In *Suvada v. White Motor Co.* (1965), 32 Ill.2d 612, we held that a manufacturer is liable under a theory of strict liability if the plaintiffs "prove that their injury or damage resulted from a condition of the product, that the condition was an unreasonably dangerous one and that the condition existed at the time it left the manufacturer's control." (32 Ill.2d 612, 623.) In *Dunham v. Vaughan & Bushnell Mfg. Co.* (1969), 42 Ill.2d 339, strict liability was imposed upon a wholesaler through whose warehouse the packaged product passed unopened. In that case we pointed out: "The strict liability of a retailer arises from his integral role in the overall producing and marketing enterprise and affords an additional incentive to safety." (42 Ill.2d 339, 344.) The plaintiffs now ask that the same liability be imposed upon a defendant who is outside of the original producing and marketing chain. We decline to do so.

One of the basic grounds supporting the imposition of strict liability upon manufacturers is that losses should be borne by those "who have created the risk and reaped the profit by placing the product in the stream of commerce." (32 Ill.2d 612, 619.) Imposition of liability upon wholesalers and retailers is justified on the ground that their position in the marketing process enables them to exert pressure on the manufacturer to enhance the safety of the product. (*Dunham v. Vaughan & Bushnell Mfg. Co.* (1969), 42 Ill.2d 339, 344; *Vandermark v. Ford Motor Co.* (1964), 61 Cal. 2d 256, 262-263, 391 P.2d 168, 171, 37 Cal. Rptr. 896, 899-900.) A wholesaler or retailer who neither creates nor assumes the risk is entitled to indemnity. (See *Suvada v. White Motor Co.* (1965), 32 Ill.2d 612, 624; *Texaco, Inc. v. McGrew Lumber Co.* (1969), 117 Ill. App. 2d 351; 2 L. Frumer & M. Friedman, Products Liability, ch. 3, sec. 16A[4] [b] [i], at 3-268 (1974).) Therefore, although liability is imposed upon anyone who is engaged in the business of selling the product (Restatement (Second) of Torts sec. 402A

(1965)), the loss will ordinarily be ultimately borne by the party that created the risk.

There is no allegation that the defects existed when the product left the control of the manufacturer. Nor is there any allegation that the defects were created by the used car dealer. (See *Realmuto v. Straub Motors, Inc.* (1974), 65 N.J. 336, 322 A.2d 440.) If strict liability is imposed upon the facts alleged here, the used car dealer would in effect become an insurer against defects which had come into existence after the chain of distribution was completed, and while the product was under the control of one or more consumers. See Restatement (Second) of Torts sec. 402A, Comment *f.*

The plaintiff asserts that public policy demands that used car dealers be made responsible for discovering all discoverable defects and insuring against all that are undiscoverable. It may well be that a heavy responsibility should be imposed upon used car dealers for the safety of the cars they sell. But we are not aware of any judicial decision that has so held, and the General Assembly seems to have expressed a contrary view. Section 2L was added to the Consumer Fraud Act in 1967. (Laws of 1967, at 2147; Ill. Rev. Stat. 1973, ch. 121½, par. 262L.) It provides that new and used motor vehicle dealers are liable to purchasers for specified proportional shares of the cost of repairs of "Power Train" components for a period of 30 days from the date of delivery. The dealer's share is 50% if the vehicle is not more than 2 years old, 25% if the vehicle is more than 2 but less than 3 years old, 10% if the vehicle is more than 3 but less than 4 years old. The dealer is not liable for any part of the cost of repairs if the motor vehicle is more than 4 years old. No intimations of an expanded public policy concerning a used car dealer's responsibility for the condition of the car he sells can be drawn from the severely restrictive provisions of this statute.

The judgment of the Appellate Court, Second District,

is reversed.

*Appellate court reversed;*
*circuit court affirmed.*

MR. JUSTICE GOLDENHERSH, dissenting:

I dissent. The rationale underlying the application of strict liability to a manufacturer is that losses should be borne by those "who have created the risk and reaped the profit by placing the product in the stream of commerce." (*Suvada v. White Motor Co.,* 32 Ill.2d 612, 619.) In *Dunham v. Vaughan & Bushnell Mfg. Co.,* 42 Ill.2d 339, strict liability was made applicable to a wholesaler and retailer for the reason that "these considerations apply with equal compulsion to all elements in the distribution system." (42 Ill.2d 339, 344.) These same considerations require application of strict liability principles to the business of selling used automobiles.

It is axiomatic that a used car dealer owes a duty to make a reasonable inspection of an automobile prior to selling it. Just as liability on the part of the manufacturer and the other "elements in the distribution system" can flow from a defect, without proof of negligence, a defect discoverable upon reasonable inspection should invoke strict liability on the part of a used car dealer, without proof of negligence in making the inspection. The complaint here alleged that the automobile, when it left defendant's control, was defective and not reasonably safe for driving and operation in that:

> "(a.) A spring or springs in the left front wheel braking system was missing at the time of its sale;
>
> (b.) One of the left rear brake shoes was completely worn out at the time of the sale;
>
> (c.) A part of the cylinder braking system in the left rear wheel was missing at the time of the sale."

These defects would have been discovered upon reasonable inspection of the vehicle.

The majority cite *Realmuto v. Straub Motors, Inc.*

(1974), 65 N.J. 336, 322 A.2d 440, and by implication attempt to distinguish it on the ground that there is no allegation "that the defects were created by the used car dealer." I submit that there is no basis for distinguishing a defect resulting from repairs made by a used car dealer and a defect which exists by reason of his failure to make a reasonable inspection, and that both should be the basis for imposing strict liability.

In *Galluccio v. Hertz Corp.*, 1 Ill. App. 3d 272, *appeal denied*, 49 Ill.2d 575, the appellate court held strict liability applicable to the lessor of a motor vehicle. No reason presents itself for not applying the principle to a used car dealer who places in the stream of commerce a vehicle rendered unreasonably dangerous by reason of a defect discoverable upon reasonable inspection.

I am aware of the argument made by defendant and *amici curiae* that many vehicles are sold "as is" and that the cost of repairs in some instances might exceed the value of the vehicle. These pleadings present no such issues, and assuming, *arguendo*, that in some future case they will arise, there is precedent for weighing the cost of remedying the dangerous condition against the nature and extent of the risk which it creates. *Kahn v. James Burton Co.*, 5 Ill.2d 614.

· I would affirm the judgment of the appellate court.