WILLIAM GILLILAND, Plaintiff-Appellant, *v.* M. O. ROTHERMEL, d/b/a Rothermel's Sunoco Service Station, Defendant-Appellee.

Second District   No. 79-269

Opinion filed April 15, 1980.

John L. Olson, of Schlueter, Ecklund, Olson & Barrett, of Rockford, for appellant.

William P. Fearer, II, Stephen C. Pemberton, and James G. Ahlberg, all of Fearer and Nye, of Oregon, for appellee.

Mr. PRESIDING JUSTICE SEIDENFELD delivered the opinion of the court:

The plaintiff was injured when an automobile tire which he was inflating exploded. He sought damages against the defendant service station owner on the theory of strict products liability for supplying him with a tire gauge which allegedly failed to function, causing the overinflation of the tire and the consequent injuries. Following a jury verdict for the plaintiff the trial court entered judgment notwithstanding the verdict and a conditional ruling for a new trial. Plaintiff appeals.

It appears from the record that on the date of the accident plaintiff went to defendant's service station to obtain a title transfer, to apply for new license plates, and to inflate a tubeless tire for use on a newly purchased automobile. As defendant worked on the title transfer papers, plaintiff requested and was given the use of defendant's tire gauge. Using defendant's air hose, the plaintiff began inflating the tire, which was situated on the ground. He could hear air hissing from the tire and rim and received a reading of 10 pounds per square inch pressure from the tire gauge. He put more air in the tire and again received a reading of 10 pounds. Plaintiff then went back inside the station and asked defendant for another tire gauge. The defendant stated that he had no other tire gauges and that there was nothing wrong with that one as far as he knew. Plaintiff again checked the air pressure, received the same reading of 10, and put the hose to the valve stem of the tire to further inflate it. The tire exploded off the rim causing extensive injuries to plaintiff.

The tire gauge was never found. After plaintiff was released from the hospital, he returned to defendant's station to get the tire and rim. Defendant insisted that he pay for the lost tire gauge before he would give back the tire and rim, and plaintiff did so.

Defendant sold most automotive products but did not maintain a stock of tire gauges. He would order one if a customer requested. Defendant kept two tire testers, one for cars and one for trucks, for his own use and also for loans to customers on request.

Plaintiff's complaint, as amended, alleged causes of action in negligence, willful and wanton conduct, strict products liability, and

implied warranty. The negligence count was dismissed on motion, but the motion to dismiss the remaining counts was denied. At the close of plaintiff's case the court directed verdicts for defendant on all counts but the strict liability count. The jury returned a verdict in favor of the plaintiff in the sum of $38,000. The court granted defendant's motion notwithstanding the verdict based principally upon defendant's argument that the strict products liability doctrine did not apply to him because he was not within the distributive chain.

The principal issue before us is whether the doctrine of strict products liability applies to defendant's conduct as shown on this record. We conclude that the doctrine does not apply.

■■ Our ruling is based upon various fundamental propositions that have been established in Illinois. Liability in tort for damage caused by a defective product may extend to one who, while engaged in commerce supplies a defective product which causes the injury, although he is neither the manufacturer, a seller or a contractor. (*Suvada v. White Motor Co.* (1965), 32 Ill. 2d 612, 617.) A defendant need not participate in the chain of distribution of a manufactured product to be strictly liable. (*Connelly v. Uniroyal, Inc.* (1979), 75 Ill. 2d 393, 410-11.) Participation in the profits from placing a defective product in the stream of commerce "presents the same public policy reasons for the application of strict liability which supported the imposition of such liability on wholesalers, retailers and lessors." (75 Ill. 2d 393, 411.) A defective item which is loaned by a seller as a "necessary incident" to a sale of a product is within the doctrine of strict liability. (*Bainter v. Lamoine LP Gas Co.* (1974), 24 Ill. App. 3d 913, 916.) The doctrine has been held inapplicable where a defendant is found to be the ultimate user of a defective product and is thus not within the distributive chain. (*Keen v. Dominick's Finer Foods, Inc.* (1977), 49 Ill. App. 3d 480, 483.) The dissent in *Keen* did not disagree with the distributive chain limitation but determined that defendant grocery store was in the distributive chain of shopping carts for strict liability purposes. *Keen,* at 484.

■■ Under the undisputed facts of this case, we conclude that the doctrine of strict products liability should not be applied to impose responsibility on the defendant for the injury to the plaintiff. The loaning of the tire gauge was neither a necessary incident of the products which defendant offered for sale nor an integral part of defendant's marketing operation. Defendant was therefore not engaged in the business of distributing the tire gauge into commerce in the sense that is a predicate of the strict liability doctrine. That predicate has been stated, "if (a) the seller is engaged in the business of selling such a product, * * *" (Restatement (Second) of Torts §402A (1965). See also *Peterson v. Lou Bachrodt Chevrolet Co.* (1975), 61 Ill. 2d 17, 20.) Essentially, the

defendant is an ultimate user of the gauge along with his occasional customer who requests permission to use the gauge. His participation in the marketing scheme of distribution of tire gauges is a minor and inconsequential aspect of defendant's business. The defendant has little ability to "exert pressure on the manufacturer to enhance the safety of the product." (*Peterson v. Lou Bachrodt Chevrolet Co.* (1975), 61 Ill. 2d 17, 20.) In addition, the supply of the gauges is a casual operation which is strictly an incidental and collateral convenience. Realistically, it cannot be said that this part of defendant's operation is essentially commercial in character or that he is marketing the gauges as a part of his overall marketing enterprise. Therefore the policy reasons for imposing strict liability on defendant do not exist under the circumstances of this case.

In ruling on the merits of the case we have rejected several arguments made by plaintiff which relate to claims of waiver and pleading errors, none of which we have found meritorious based on our inspection of the record. Also, in view of our conclusion that strict liability does not apply and that the judgment notwithstanding the verdict was properly entered for defendant, we do not rule on plaintiff's claim that the court erroneously entered the conditional judgment for a new trial with alternative findings. We do comment, however, that it appears improper to alternatively order that if the jury's determination on the issue of assumption of risk is to be tested by a standard of preponderance of the evidence a new trial would be ordered conditionally, but that if the test is the manifest weight of the evidence to conditionally deny the motion. To avoid any possibility of future confusion in this district we adhere to the rule that the manifest weight of the evidence is the applicable test. See *Mizowek v. De Franco* (1976), 64 Ill. 2d 303, 310.

The judgment is affirmed.

Affirmed.

VAN DEUSEN and WOODWARD, JJ., concur.