MARY TIMM, Plaintiff-Appellant, v. INDIAN SPRINGS RECREATION ASSOCIATION, Defendant-Appellee (Ruth Cochran, Defendant).

Fourth District   No. 4—89—0139

Opinion filed August 17, 1989.

G. Michael Prall, of Chesley, Wilson & Prall, of Bloomington, for appellant.

Quinn, Johnston, Henderson & Pretorius, of Peoria (John P. Fleming and Charles D. Knell, of counsel), for appellee.

JUSTICE SPITZ delivered the opinion of the court:

Plaintiff Mary Timm sued defendants Indian Springs Recreation Association (Indian Springs) and Ruth Cochran in the circuit court of McLean County to recover damages for personal injuries she sustained when she fell from a golf ·cart operated by Cochran and

which was sold to Cochran by Indian Springs. Count I of plaintiff's amended complaint alleged negligence against Indian Springs and count II alleged wilful and wanton misconduct against Indian Springs. Neither of these counts is involved in this appeal. Nor are counts V and VI, which alleged negligence on the part of Cochran.

This appeal involves only the issue of whether the trial court properly granted summary judgment in favor of Indian Springs on counts III and IV. Counts III and IV of plaintiff's amended complaint attempted to allege causes of action in strict products liability against Indian Springs.

The order of the circuit court, filed November 16, 1988, denied Indian Springs' motion for summary judgment as to counts I and II, and granted the motion as to counts III and IV. On January 27, 1989, an additional order of the trial court was filed denying Indian Springs' motion to reconsider the earlier ruling on counts I and II and a request for a Supreme Court Rule 308 finding (107 Ill. 2d R. 308) permitting an interlocutory appeal. The January 27, 1989, order also denied plaintiff's motion to reconsider the summary judgment granted as to counts III and IV, and further ordered, pursuant to Supreme Court Rule 304(a) (107 Ill. 2d R. 304(a)), that there was no just reason to delay enforcement or appeal of the order granting summary judgment on counts III and IV. Plaintiff filed a notice of appeal on February 14, 1989.

Plaintiff was allegedly injured on May 28, 1985, when she fell from a golf cart owned and driven by Cochran. Her injury allegedly occurred because of the absence of a handrail on the cart. Cochran and her husband had purchased the cart from Indian Springs.

Indian Springs acquired the golf cart in question on or about January 10, 1980, when a lease agreement was entered into for five 1980 Model MG-IV Harley Davidson, four-wheel electric golf carts. On or about October 1, 1982, Indian Springs exercised its option under the lease to purchase the carts. At the time the carts were acquired, they were all equipped with handrails on each side.

Before 1985, these carts were rented to club members and to the general public. Indian Springs maintained these carts and in 1984 charged rental fees of $6 for 9 holes and $10 for 18 holes. The gross income from the rental of the carts in 1984 was approximately $20,000, and the maintenance expense incurred was between $4,000 and $5,000.

In 1984, it was common for handrails to be missing from carts. An attempt was made to weld handrails back onto the seat frame, but within a couple of weeks the handrails came off again. Thereaf-

ter, a decision was made not to try to weld the handrails back onto the seat frames. During 1984, the majority of the four-wheeled carts were missing at least one handrail. These carts were rented to golfers in 1984 without handrails on them.

At the end of 1984, the decision was made by the club to sell all of the carts. The entire fleet of golf carts, then 18 in number, was sold in late 1984 or in early 1985. Most of the carts were sold to the club manager, Tom Kerfott. One of the Harley Davidson carts was sold to the Cochrans. The carts were sold on an "as is" basis, and this was the only sale of golf carts ever conducted by Indian Springs.

At the time of purchasing the carts, according to Harold Cochran, the cart was equipped with one handrail, which he removed because it was flimsily bolted on. In the portion of the deposition supplied to this court, Harold does not say from which side of the cart this handrail was removed. Plaintiff's deposition indicates she did not give any thought to looking for handrails at the time she entered the golf cart. According to Kerfott's deposition, in order to correct the problem with the handrails, the seat frame on the cart needed to be replaced since the handrails and seat frame were an integral unit. Kerfott estimated the cost of this seat frame to be $70, but he believed that even if a whole new unit was put on the cart the handrails would come off again.

Plaintiff suffered her injury when Cochran made a turn on a hill on the sixth hole of defendant's golf course, causing plaintiff to slide out of the cart to the downhill side. Plaintiff tried to find something to hold onto which would prevent her from sliding out, but there was nothing there.

Count III of plaintiff's amended complaint alleges that at the time the golf cart was sold, the cart was in an unreasonably dangerous condition which defendant knew or should have known, being that a handrail on the passenger's side was missing, and therefore the cart was not reasonably safe for its intended use. Count IV alleges the same defect, but further alleges Indian Springs conducted itself with flagrant indifference to the safety of its members and guests because attempts to refasten the handrail were ineffective and defendant was aware of, or should have been aware of, the fact that the only proper remedy was to install an entire new seat support with handrail.

The trial court found there is no factual dispute in this case. The basic question for the trial court to decide was whether Indian Springs, as a matter of law, fit within the category of persons to

which the doctrine of strict products liability should be applied. After finding the defendant's leasing of carts was not defendant's primary operation and was incidental to the operation of the golf course, and relying on the fact the carts were sold at a one-time sale on an "as is basis," the trial court decided the principles underlying strict products liability should not apply to this defendant.

■ The only issue to be considered on appeal is whether as a matter of law a golf course which rents golf carts to persons utilizing the golf course and later sells the carts is subject to an action in strict products liability for injuries which occur to a subsequent user of one of the carts. In *Reed v. Bascon* (1988), 124 Ill. 2d 386, 393, 530 N.E.2d 417, 420, the Illinois Supreme Court recently reviewed the standards for granting summary judgments:

> "Section 2—1005(c) of the Civil Practice Law (Ill. Rev. Stat. 1985, ch. 110, par. 2—1005(c)) provides that summary judgment shall be granted 'if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' Although summary judgment is to be encouraged as an aid in the expeditious disposition of a lawsuit (*Allen v. Meyer* (1958), 14 Ill. 2d 284, 292), it is a drastic measure and, therefore, should be allowed only when the right of the moving party is free from doubt (*Purtill v. Hess* (1986), 111 Ill. 2d 229, 240; *Beverly Bank v. Alsip Bank* (1982), 106 Ill. App. 3d 1012, 1016). The court must construe the pleadings, depositions, admissions, exhibits, and affidavits on file strictly against the movant in determining whether a genuine issue of material fact exists. *Kolakowski v. Voris* (1980), 83 Ill. 2d 388, 398."

Where the matter before the trial court can be decided as a matter of law, the case is a proper one for summary judgment. *Nichelson v. Curtis* (1983), 117 Ill. App. 3d 100, 452 N.E.2d 883.

■ Anyone who is in the business of placing a defective product into the stream of commerce by leasing it, rather than selling it, may be strictly liable for any injuries which proximately result therefrom. (*Smith v. Metropolitan Sanitary District of Greater Chicago* (1979), 77 Ill. 2d 313, 396 N.E.2d 524; *Knapp v. Hertz Corp.* (1978), 59 Ill. App. 3d 241, 375 N.E.2d 1349; *Galluccio v. Hertz Corp.* (1971), 1 Ill. App. 3d 272, 274 N.E.2d 178.) This is so even though the lessor supplies the operator for the rented machines. Supplying the operator does not change the nature of the transaction from leasing of equipment to providing a service. (*Niffenegger*

*v. Lakeland Construction Co.* (1981), 95 Ill. App. 3d 420, 420 N.E.2d 262.) Nor does the sale of the leased equipment ordinarily remove the former lessor from the chain of distribution so as to defeat imposition of strict liability. *Crowe v. Public Building Comm'n* (1978), 74 Ill. 2d 10, 383 N.E.2d 951.

Defendant's argument in support of summary judgment is twofold. First, this is a sale of a used vehicle and strict products liability does not apply to the sale of a used vehicle. Second, this is a one-time sale, an isolated sale and, therefore, strict liability cannot be applied to defendant.

■ It is true that a used car sales dealership cannot be held liable in strict products liability. (*Peterson v. Lou Bachrodt Chevrolet Co.* (1975), 61 Ill. 2d 17, 329 N.E.2d 785.) The reason is that the product left the chain of distribution before it got to the used car dealer. It is also true, as defendant argues, that only persons engaged in the "business" of selling are held liable under strict products liability. Certainly the sale of a used saw from one private owner, albeit the operator of a sawmill, to another is not contemplated as being covered under strict products liability. (*Siemen v. Alden* (1975), 34 Ill. App. 3d 961, 341 N.E.2d 713.) Nor is the sale of one item of equipment which is part of the bulk sale of the entire business. (*Daniels v. McKay Machine Co.* (7th Cir. 1979), 607 F.2d 771.) In *Keen v. Dominick's Finer Foods, Inc.* (1977), 49 Ill. App. 3d 480, 364 N.E.2d 502, plaintiff sued a grocery store in strict liability for injuries allegedly sustained from a defective grocery cart. The store had furnished the grocery cart to the customers incident to selling other items. The court reasoned:

> "In *Dunham v. Vaughan and Bushnell Manufacturing Co.* (1969), 42 Ill. 2d 339, 247 N.E.2d 401, the court stated that *Suvada* applies with equal compulsion to all the parties in a chain who place the article into commerce. While liability does not depend upon whether there was an actual sales transaction (*Galluccio v. Hertz Corp.* (1971), 1 Ill. App. 3d 272, 274 N.E.2d 178), it is necessary that the party to be charged with liability be in the business of placing the allegedly defective product into the stream of commerce. (*Siemen v. Alden* (1975), 34 Ill. App. 3d 961, 341 N.E.2d 713.) Accordingly, it becomes apparent that the cornerstone of liability rests upon the defendant's active participation in placing the product into commerce for use and consumption by others. One of the underlying reasons for imposing strict liability is to ensure that losses are borne by those who have created the risk and

subsequently reaped the profit of marketing the allegedly defective product. Liability will not be imposed upon a defendant who is not a part of the original producing and marketing chain. *Peterson v. Lou Bachrodt Chevrolet Co.* (1975), 61 Ill. 2d 17, 329 N.E.2d 785.

\* \* \*

\* \* \* In this case, the allegedly defective shopping cart was placed into the stream of commerce by the parties responsible for its distribution to Dominick's. The store, like its customer is merely a user of the shopping cart.

Public policy considerations do not demand that the duty of a storekeeper to keep its premises in a safe condition be elevated beyond the traditional standard of reasonable care. (*Ryan v. Robeson's Inc.* (1969), 113 Ill. App. 2d 416, 251 N.E.2d 545.) \* \* \* Dominick's cannot be considered to be part of the distributive chain within the ambit of the principles of strict products liability." *Keen*, 49 Ill. App. 3d at 482-83, 364 N.E.2d at 504-05.

In this case, just as was the grocery store in *Keen*, defendant was a private, individual consumer which incidentally provided golf carts to users of the course. We are not persuaded that merely because a small fee was charged for the use of the golf cart distinguishes the *Keen* case from the case at bar. However, we are persuaded, as was the trial court, that this was a one-time sale by a private owner not in the business of selling golf carts to the general public and that the law of strict products liability should not be extended to apply to this situation.

Accordingly, the order of the circuit court of McLean County granting summary judgment to Indian Springs is affirmed.

Affirmed.

LUND and GREEN, JJ., concur.