**Daniel J. FEIK, Plaintiff,**

v.

**SIEG COMPANY, an Iowa Corporation, and Monroe Auto Equipment Company, a Delaware Corporation, Defendants.**

**No. 90–4058.**

United States District Court, C.D. Illinois, Rock Island Division.

May 7, 1993.

Steven A. Wakeman, Kingery Durree Wakeman & Ryan, Peoria, IL, for plaintiff.

Jordan A. Fifield, Goldsworthy Fifield & Hasselberg, Rex K. Linder, Heyl Royster Voelker & Allen, Peoria, IL, for defendants.

## ORDER

McDADE, District Judge.

Before the Court is Defendant Sieg Company's Motion for Summary Judgment on Count II of Plaintiff Daniel Feik's Complaint and Count II of Cross-claimant Monroe Auto Equipment Company's Cross-claim. Plaintiff's Complaint is in four counts. Counts I and II allege causes of action in negligence and strict liability against Sieg, and Counts III and IV make the same allegations against Monroe. Monroe's Cross-claim against Sieg seeks contribution from Sieg in the event that Monroe is found liable to Plaintiff under the allegations of Plaintiff's Complaint. Only Count II of the Complaint and Cross-claim are at issue here. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332.

"A motion for summary judgment is not an appropriate occasion for weighing the evidence; rather, the inquiry is limited to determining if there is a genuine issue for trial." *Lohorn v. Michal,* 913 F.2d 327, 331 (7th Cir.1990). *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.ED.2d 202 (1986). This Court must "view the record and all inferences drawn from it in the light most favorable to the party opposing the motion." *Holland v. Jefferson National Life Ins. Co.,* 883 F.2d 1307, 1312 (7th Cir.1989). When faced with a Motion for Summary Judgment, the non-moving party may not rest on its pleadings. Rather, it is necessary for the non-moving party to demonstrate, through specific evidence, that there remains a genuine issue of triable fact. *See, Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *Bank Leumi Le–Israel, B.M. v. Lee,* 928 F.2d 232, 236 (7th Cir.1991).

## BACKGROUND

Sieg, an Iowa corporation, owns and operates an auto parts store in Aledo, Illinois. Monroe, a Delaware corporation, manufactures and sells Monroe Gas–Matic Struts (struts) for use on automobiles. On January 26, 1989, Plaintiff purchased two struts from Sieg. At the time Plaintiff purchased the struts, he also borrowed a compressor vise. (Complaint p. 1–2). The compressor, designed to compress springs, is used in the installation of struts.

Sieg obtained the compressor vise to loan to customers who chose to install struts themselves. No records were kept of who borrowed the compressor and customers were not charged for its use. (Elliot dep. 22–23). The compressor, however, was infrequently used, and in the words of Richard Elliot, the manager of Sieg's Aledo store, "we don't have that many over-the-counter do-it-yourselfers that install ... struts." (Elliot dep. p. 23).

At the time Plaintiff borrowed the compressor, a certain thread on a bolt in the compressor was stripped. Both Plaintiff and Elliot testified that Elliot informed Plaintiff of the stripped bolt. (Elliot Dep. p. 18, Plaintiff Dep. p. 26). Plaintiff also stated that Elliot told him to "do what you can with it." (Plaintiff Dep. p. 98). Plaintiff further testified that his "assumption was that ...

the tool had been ... messed up for a while and other people had been using it." (Plaintiff Dep. p. 101).

The compressor did not come with instructions, but a warning label and certain directions were attached to the compressor. (Elliot Dep. p. 37, 57). The compressor included a warning to wear safety glasses, lubricate the compressor with "anti-seize" compound, and avoid torquing the bolt over 30 pounds. (Larson Dep. p. 75, 122, 124). Another warning stated "not for use on General Motors car springs. Personal injury could result." (Larson Dep. p. 121). Plaintiff does not remember seeing the warnings, and does not recall reading the caution concerning eye protection. (Plaintiff Dep. p. 123).

On the same date that Plaintiff bought the struts and borrowed the compressor, Plaintiff and his brother attempted to install the struts onto Plaintiff's car, a Plymouth Reliant. (Plaintiff's Dep. 65, Daniel Feik Dep.). "[D]uring the process of installing the strut onto his automobile, [Plaintiff] suffered serious and permanent personal injury, when the rod nut supplied by Monroe with the strut, came loose, causing the rod nut and upper mounting bracket to shoot off of the strut with great force, striking Plaintiff in the eye ... resulting in the loss of his left eye." (Complaint p. 2).

Plaintiff testified that the compressor itself was laying on the floor when the accident occurred, but that the compressor played a role in the accident by not compressing the spring enough. (Plaintiff's Dep. p. 56–58). Plaintiff's Complaint alleges that "[t]he threads on the center bolt of the compressor were stripped, preventing it from compressing the Strut sufficiently so as to enable the safe and proper installation of the Strut." (Complaint p. 4).

## ANALYSIS

The general rule of products liability is set out in *Suvada v. White Motor Co.*, 32 Ill.2d 612, 623, 210 N.E.2d 182, 188 (1965). This rule states that:

The plaintiffs must prove that their injury or damage resulted from a condition of the product, that the condition was an unreasonably dangerous one and that the condition existed at the time it left the manufacturer's control.

*Id.* Of course, the rule of strict liability is not only applied to manufacturers but to distributors as well. *Bainter v. Lamoine LP Gas Co.*, 24 Ill.App.3d 913, 321 N.E.2d 744 (1974).

In the case at bar, Plaintiff has not alleged liability on the part of the manufacturer of the compressor, but on Sieg, an auto parts dealer that loaned the compressor to Plaintiff. In a similar situation, the court in *Keen v. Dominick's Finer Foods, Inc.*, 49 Ill. App.3d 480, 7 Ill.Dec. 341, 364 N.E.2d 502 (1977), stated that:

*Suvada* applies with equal compulsion to all the parties in a chain who place the article into commerce. While liability does not depend upon whether there was an actual sales transaction ... it is necessary that the party to be charged with liability be in the business of placing the allegedly defective product into the stream of commerce.... Accordingly, it becomes apparent that the cornerstone of liability rests upon the defendant's active participation in placing the product into commerce for use and consumption by others.

*Keen*, 7 Ill.Dec. at 343, 364 N.E.2d at 504.

In its Motion for Summary Judgment, Sieg argues that there has been no allegation that Sieg was part of the original producing and marketing chain or that the compressor was unreasonably dangerous at the time it left the manufacturer's control. Consequently, Sieg argues that it cannot be held liable in strict product liability because the compressor had already left the chain of distribution before it was loaned to Plaintiff.

In support of its position, Sieg refers the Court to *Timm v. Indian Springs Recreation Association*, 187 Ill.App.3d 508, 135 Ill.Dec. 155, 543 N.E.2d 538 (1989). In *Timm*, plaintiff sued defendant for injuries sustained after plaintiff fell from a golf cart owned and operated by defendant. Defendant purchased the cart from Indian Springs, and Indian Springs had previously purchased the cart from Harley Davidson.

In deciding *Timm,* the court noted that "[a]nyone who is in the business of placing a defective product into the stream of commerce by leasing it, rather than selling it, may be strictly liable for any injuries which proximately result therefrom." *Timm,* 135 Ill.Dec. at 158, 543 N.E.2d at 541. (citations omitted). The court went on to note that the sale of leased equipment does not ordinarily "remove the former lessor from the chain of distribution so as to defeat imposition of strict liability." *Id.* The court further noted that the cornerstone of strict liability "rests upon the defendant's active participation in placing the product into commerce for use and consumption by others." *Timm,* 135 Ill.Dec. at 159, 543 N.E.2d at 542. Liability, however, "will not be imposed upon a defendant who is not a part of the original producing and marketing chain." *Id.*

Having stated the above principles, the court then analogized the facts before it to the facts in *Keen.* In *Keen,* plaintiff sued a grocery store in strict liability for injuries sustained from a defective grocery cart. The store furnished the grocery cart to customers incident to selling other items. The *Keen* court found that the grocery cart was placed into the stream of commerce by the party who distributed it to the store, but that the store, like its customer, was merely a user of the grocery cart. The *Keen* court further found that the grocery cart was a mere item of convenience that not every customer would use, and that the customer was not compelled to use the cart. *Keen,* 7 Ill.Dec. at 343, 364 N.E.2d at 504. Because the grocery store could not be considered part of the distributive chain within the ambit of strict liability, the store could not be held liable.

After considering the *Keen* facts, the *Timm* court stated "[i]n this case, just as was the grocery store in *Keen,* defendant was a private individual consumer which incidentally provided golf carts to users of the course . . . a one-time sale by a private owner not in the business of selling golf carts to the general public [does not invoke] the law of strict liability." *Timm,* 135 Ill.Dec. at 159, 543 N.E.2d at 542.

Sieg, and the above-cited cases, also refer to *Peterson v. Lou Bachrodt Chevrolet Co.,* 61 Ill.2d 17, 329 N.E.2d 785 (1975). In *Peterson,* the court held that the doctrine of strict liability could not be imposed to render the seller of a used automobile liable in the absence of allegations that the defects existed when the ·product left the control of the manufacturer or that the defects were caused by the used car dealer. *Peterson,* 329 N.E.2d at 787. Based on *Timm, Keen,* and *Peterson,* Sieg argues that strict liability cannot be imposed upon it for transferring a used compressor to Plaintiff, because the compressor had already left the stream of commerce before it was loaned to Plaintiff.

Plaintiff and Monroe argue in response that Sieg was in the distributive chain and, therefore, is liable for the loan of the defective compressor even though Sieg did not create the defect. In support of their argument, Plaintiff and Monroe refer the Court to three cases in which the lessor of a defective product was considered to be part of the distributive chain and subject to the principles of strict liability. *See Crowe v. Public Building Commission of Chicago,* 74 Ill.2d 10, 23 Ill.Dec. 80, 83, 383 N.E.2d 951, 954 (1978) (The former lessor of a defective scaffold is subject to the doctrine of strict liability "on the basis of its integral role as lessor within the original chain of distribution." The former lessor is subject to strict liability "for defects which existed at the time the product left its control."); *Knapp v. Hertz Corporation,* 59 Ill.App.3d 241, 17 Ill.Dec. 65, 375 N.E.2d 1349 (1978) (Rental car company is strictly liable for injuries caused by defective braking system because the company placed the unreasonably dangerous product into the stream of commerce.); *Galluccio v. The Hertz Corp.,* 1 Ill.App.3d 272, 274 N.E.2d 178 (1971) (The court applied the doctrine of strict liability in tort in a bailor-bailee relationship between defendant rental corporation and plaintiff who was injured due to defective brakes on the leased vehicle.) These cases, however, do not specifically state that one who loans a defective product attendant to the sale of another product may be found strictly liable regarding the loaned defective product. Rather, the cited cases stand for the proposition that rental agencies may be strictly liable for renting the defec-

tive product, because the act of renting places the defective product into the stream of commerce.

A more closely analogous case to which Feik and Monroe refer is *Bainter v. Lamoine LP Gas Co.*, 24 Ill.App.3d 913, 321 N.E.2d 744 (1974). In *Bainter*, the defendant installed a liquid propane gas tank on plaintiff's farm. The defendant gas company owned the tank and would fill it with gas on plaintiff's request. On one occasion, a faulty valve of the tank caused gas vapor to ignite, resulting in serious property damage to plaintiff's farm. Plaintiff sued the defendant gas company in strict liability, alleging that defendant, who was in the business of selling gas, had installed the tank for the purpose of selling gas and that the tank was unreasonably dangerous. In deciding the case, the court framed the issue as follows:

> [W]hether the rule of strict liability in tort is applicable to one who is in the business of selling gas and not the storage tank where a defect in such storage tank was an unreasonably dangerous one, existed at the time it left defendant's control and was the proximate cause of the damages.

*Bainter*, 321 N.E.2d at 745.

After examining the policy concerns of strict liability discussed in *Suvada*, the *Bainter* court stated:

> Since it is undisputed that the tank was supplied by way of loan to the plaintiff as a necessary incident of periodic sales of gas we believe it is immaterial whether a formal lease is entered into between the parties either oral or in writing. In any event the furnishing of the tank by the defendant and the use thereof by the plaintiff was an *incident of the sale of the gas and the consideration for the sale included the use of the tank.*

*Bainter*, 321 N.E.2d at 746. (emphasis added). Accordingly, the court found that the gas company could be held liable under strict liability. *Id.*

*Bainter* is similar to the case at bar in that defendant was not sued based on the product it sold, but on the product it owned and supplied incident to the sale. It is dissimilar in that the loan of the compressor to Feik was not integral to the sale of the struts; its use was not part of the "consideration for the sale" of struts. On the other hand, in *Bainter*, it was absolutely necessary to install a gas tank, as the liquid propane could be contained in no other way, and the gas could not be sold without the tank.

Another analogous case, not cited by the parties, is *Gilliland v. M.O. Rothermel*, 83 Ill.App.3d 116, 38 Ill.Dec. 528, 403 N.E.2d 759 (1980). In *Gilliland*, plaintiff went to defendant's service station to inflate a tubeless tire. Plaintiff borrowed a tire gauge from defendant and, upon putting it to use, noticed that the gauge continually registered 10 pounds per square inch. After receiving assurances from defendant that the tire gauge was not defective, plaintiff continued to put air into the tire, and the gauge continued to read 10 pounds per square inch. Eventually the inevitable occurred, and the over inflated tire exploded off the rim causing extensive injuries to plaintiff. *Gilliland*, 38 Ill.Dec. at 529, 403 N.E.2d at 760.

The *Gilliland* court considered the case in light of the holdings of *Bainter* and *Keen*. *Bainter*, as discussed above, held that "[a] defective item which is loaned by a seller as a 'necessary incident' to a sale of a product is within the doctrine of strict liability." *Gilliland*, 38 Ill.Dec. at 530, 403 N.E.2d at 761. *Keen*, on the other hand, held that the doctrine is inapplicable "where a defendant is found to be the ultimate user of a defective product and is thus not within the distributive chain." *Id.*

After analyzing the above principles, the *Gilliland* court stated:

> Under the undisputed facts of this case we conclude that the doctrine of strict products liability should not be applied to impose responsibility on the defendant for the injury to the plaintiff. The loaning of the tire gauge was neither a necessary incident of the products which defendant offered for sale nor an integral part of defendant's marketing operation. Defendant was therefore not engaged in the business of distributing the tire gauge into

commerce in the sense that is a predicate of the strict liability doctrine. *Id.*

Accordingly, the *Gilliland* court found that the defendant was the ultimate user of the gauge, and defendant's participation in the distributive chain of tire gauges was minor and inconsequential. The court further found that the supply of gauges was a casual operation which amounted to nothing more than an incidental and collateral convenience. The court stated that "[r]ealistically, it cannot be said that this part of defendant's operation is essentially commercial in character or that he is marketing the gauges as part of his overall marketing enterprise. Therefore, the policy reasons for imposing strict liability on defendant do not exist under the circumstances of this case." *Id.*

In the case at bar, the Court finds that the loan of the compressor was not a "necessary incident" to the sale of the struts within the doctrine of strict liability. The situation herein is quite different from the facts presented in *Bainter* where "the fluidity of the product compelled supplying the tank as a necessary concomitant of the sale of gas." *Keen,* 7 Ill.Dec. at 343, 364 N.E.2d at 504. Rather, the loan of the compressor is similar to the use of a shopping cart in *Keen* or the tire gauge in *Gilliland,* which some customers, but not all, used as a matter of convenience. Additionally, the evidence shows that Sieg did not sell compressor vises but had only one which it occasionally loaned to customers. (Elliot dep. p. 11–12). Thus, the loan of the compressor was neither a necessary incident of the sale of struts, nor an integral part of Sieg's marketing operation. Furthermore, there is no evidence that consideration for the sale of the struts included the use of the vise. *Bainter,* 321 N.E.2d at 746. Consequently, the Court finds that Sieg was not in the business of distributing compressor vises into the stream of commerce. The loan of the compressor was simply "a casual operation which [was] strictly an incidental and collateral convenience." *Gilliland,* 38 Ill.Dec. at 529, 403 N.E.2d at 760.

Sieg is in the same position as the defendant in *Gilliland,* in that Sieg is the ultimate user of the compressor along with the occasional customer who requests permission to use the compressor. Sieg's "participation in the marketing scheme of distribution of [compressors] is a minor and inconsequential aspect of [its] business." *Gilliland,* 38 Ill. Dec. at 529, 403 N.E.2d at 760. As a result, Sieg has little ability to "'exert pressure on the manufacturer to enhance the safety of the product.'" *Id.* (quoting *Peterson,* 329 N.E.2d at 787). Consequently, the policy reasons for imposing strict liability on Sieg do not exist under the fact of this case.

## CONCLUSION

For the above stated reasons, the Court **GRANTS** Sieg's Motion for Summary Judgment on Count II of Plaintiff's Complaint and Count II of Monroe's Cross-claim. Sieg's motion for judgment on the pleadings regarding Count II of the Complaint and Cross-claim is **MOOT**.