725 P.2d 1123

**Richard D. MASSEY and Jo Ann Massey, his wife, Plaintiffs/Appellants,**

v.

**Wayne COLARIC and Mary Gale Colaric, his wife, Defendants/Appellees.**

**No. 2 CA–CIV 5570.**

Court of Appeals of Arizona, Division 2, Department A.

April 3, 1986.

Corbet & Eagleburger, Ltd. by Kevin W. Keenan, Phoenix, for plaintiffs/appellants.

Sorenson, Moore & Julian by J. William Moore, Phoenix, for defendants/appellees.

## OPINION

HOWARD, Presiding Judge.

This is an appeal from a defense verdict in a personal injury case. The main issue is whether assumption of risk is available as a defense to an action pursuant to A.R.S. § 24–378, which provides:

"Injury to any person or damage to any property by a dog while at large shall be the full responsibility of the dog

owner or person or persons responsible for the dog when such damages were inflicted."

On February 7, 1982, plaintiff Richard Massey, an experienced horseman, was riding a horse he had purchased the day before. The horse had been "green broke," which meant that the horse could be saddled, bridled, and ridden but that he lacked the fine tuning to make him a finished horse. Massey had been looking for a calm horse which did not "spook" easily, and this horse met his requirements.

Massey took the horse to Peoria, Arizona to board it with a friend, Mr. Barkow, who lived on the south side of Patrick Lane. The defendants also lived on the south side of Patrick Lane, five houses east of Barkow's house. All of the houses in this area were located on full-acre mini-ranch style houses. There were no homes on the north side of Patrick Lane for at least a quarter of a mile, and the area was vacant desert terrain.

On the day in question Massey went to the Barkow residence to ride his horse. He saddled it and rode it around the horse arena for approximately 30 minutes. The horse was calm, docile and manageable. He decided to take the horse out in the desert for a ride and rode east on Patrick Lane. As he came within 150 yards of the defendants' house, three or four dogs ran out from the area of the house. As the dogs came towards Massey, his horse reacted and he became concerned. He knew that the horse was being made nervous or anxious by the dogs. When he saw the horse's reactions to these dogs, he stopped and changed his direction from eastbound to northbound, heading out to the desert area away from the defendants' house.

When Massey changed directions the dogs retreated. After the dogs went back, Massey changed direction again and headed easterly. The dogs came out a second time and started running towards him and barking, but Massey continued, although nothing prohibited him from changing direction or getting off of his horse. As the dogs approached the horse, it became disturbed once again. When one of the dogs ran under the horse, it started acting quite scared and "spooked." The horse reared, snorting and lunging back and forth on his front legs, turned sharply to the left and within two or three strides was running at full speed. After the horse ran through several bushes, Massey was thrown off, causing him to be injured. There was a dispute at trial as to whether or not defendants' dogs were the dogs that were involved in the incident.

A.R.S. § 24–378 imposes strict liability on dog owners whose dogs cause injuries or damages while at large. *Toney v. Bouthillier,* 129 Ariz. 402, 631 P.2d 557 (App.1981). However, this does not mean that there are no defenses available to the owner or person who is responsible for the dog. Thus, provocation is a defense. *Toney v. Bouthillier,* supra. Other states have also held that assumption of risk is a defense to strict liability actions involving animals. See, *Wendland v. Akers,* 356 So.2d 368 (Fla.App.1978); *Gilliland v. Rothermel,* 83 Ill.App.3d 116, 38 Ill.Dec. 528, 403 N.E.2d 759 (1980); *Franken v. City of Sioux Center,* 272 N.W.2d 422 (Iowa 1978); *Daniel v. Cambridge Mutual Fire Insurance Company,* 368 So.2d 810 (La.App.1979); *Parker v. Hanks,* 345 So.2d 194 (La.App.1977). We also note that in the area of products liability, assumption of risk is a potential defense to an action for strict liability in tort. *Ball Corporation v. George,* 27 Ariz.App. 540, 556 P.2d 1143 (1976).

In the absence of contrary authority, Arizona courts follow the Restatement of the Law. *Bank of America v. J & S Auto Repairs,* 143 Ariz. 416, 694 P.2d 246 (1985). Section 515 of the Restatement (Second) of Torts (1977) states that the plaintiff's assumption of the risk of harm from the animal is a defense to strict liability. We shall follow the Restatement and hold that the trial court did not err in failing to direct a verdict in the plaintiffs' favor or in giving an instruction on assumption of risk.

The plaintiffs contend that the trial court should not have given an assumption of risk instruction in this case because there was no evidence to support such an instruction. We do not agree. We are concerned here with implied assumption of risk which requires the presence of the following elements:

"(1) There must be a risk of harm to plaintiff caused by defendant's conduct or by the condition of the defendant's land or chattel; (2) the plaintiff must have actual knowledge of the particular risk and appreciate its magnitude; and (3) the plaintiff must voluntarily choose to enter or remain within the area of the risk under circumstances that manifest his willingness to accept that particular risk." *Hildebrand v. Minyard*, 16 Ariz. App. 583, 585, 494 P.2d 1328, 1330 (1972).

Plaintiffs here argue that Massey did not know and appreciate the risk of danger caused by the dogs. However, his own testimony established that he was subjectively aware of and appreciated the risk of harm caused by the dogs in question. He testified that he knew his horse was being made nervous by the dogs the first time he encountered them and that the reason he stopped and changed direction was because he knew that the dogs were making his horse nervous. Further, he testified that as he approached the dogs the second time, he knew his horse was getting more nervous than it had the previous time. He admitted that he was not surprised that the horse reacted the way it did. The evidence also clearly established that Massey voluntarily chose to remain within the area of the risk. He specifically testified that, although he knew his horse was made nervous by the dogs and that the horse was more nervous the second time the dogs approached, he did not change direction and did nothing to prevent the horse from encountering the dogs once more.

As was further stated in *Hildebrand v. Minyard*, supra:

" * * * In the implied assumption of risk situation the consent is manifested by the plaintiff's actions after he has been informed of the nature and magnitude of the specific danger involved. Therefore, when the plaintiff voluntarily enters into some relationship with the defendant, with the knowledge that the defendant will not protect him against the risk, he may then be regarded as tacitly or impliedly consenting to the negligence, and agreeing to take a chance...." 16 Ariz. App. at 585, 494 P.2d at 130.

The evidence discloses that Massey knew of the specific danger created by the existence of the dogs, yet he chose to encounter the dangerous situation once again and he failed to take the evasive action that he knew would eliminate the risk. The trial court did not err in giving an instruction on assumption of risk.

The plaintiffs contend that the actual instruction on assumption of risk was erroneous. The instruction given by the court was as follows:

"A person assumes the risk of injury when he voluntarily exposes himself to the specific danger created by Defendants' dog which causes injury, and which he knows about and understands."

Contrary to plaintiffs' contention, this instruction contains all the elements required by the defense of assumption of risk. See *Hildebrand v. Minyard*, supra.

The plaintiffs complain about another instruction by the court to the jury. The instruction read as follows:

"Before you can find the Defendants liable, you must find that the Defendants owned the dogs and that the Defendants dogs caused the Plaintiff's injury...."

Plaintiffs contend that this was error because the trial court should have instructed the jury that there was an Arizona statute which made the owner of the dog liable for injuries and damages caused to another person as a result of the owner's dog. We do not agree with this contention. The instruction given by the trial court contains the essence of the strict liability imposed by the statute. It was not necessary for the trial court to tell the jury that this liability was created by statute.

The plaintiffs also complain that the trial court erred when it failed to instruct the jury that there was a Maricopa County ordinance which also made the defendants liable for any injuries caused by the their dogs at large. The record discloses that at trial the plaintiffs chose to proceed under the state statute rather than the ordinance, so if there is any validity in plaintiffs' contention, which we doubt in view of our disposition of their contention which we have just previously discussed, plaintiffs waived any right to have the jury instructed as to the Maricopa County ordinance.

Finally, plaintiffs contend that the trial court erred in allowing an expert witness to testify. About one year before the trial, the plaintiffs were made aware that a Mr. Tom Lyons would testify as an expert in the field of horses. However, it was not until approximately one week before the trial that plaintiffs' counsel was apprised that Lyons was in fact planning to testify. Plaintiffs' counsel telephoned Lyons, who refused to talk to plaintiffs' counsel at that time. Lyons specifically told plaintiffs' counsel that any information he had could be obtained from counsel for the defendants but not from him. No attempt was made by the defendants to update their answers to interrogatories to set forth the substance of Lyon's proposed expert testimony. When Lyons appeared at the trial, plaintiffs objected on the ground of surprise and asked the trial court to refuse to allow Lyons to testify. The plaintiffs did not ask for a continuance to discover his testimony nor does the record disclose that plaintiffs' attorneys called the defendants' attorneys to find out what Lyons was going to say at trial.

Plaintiffs contend that the trial court erred in allowing Lyons to testify. We do not agree. The determination of whether to impose a sanction for failure to update interrogatories is within the trial court's discretion. *Nienstedt v. Wetzel,* 133 Ariz. 348, 651 P.2d 876 (App.1982). In view of the fact that plaintiffs could have found out prior to trial what Lyons was going to testify to and in view of the fact

that they did not move for a continuance at trial, the trial court did not abuse its discretion in allowing the witness to testify.

Affirmed.

HATHAWAY, C.J., and LIVERMORE, J., concur.