**John H. Ryan, Plaintiff-Appellant, v. Robeson's, Inc., a Corporation, Defendant-Appellee.**

**Gen. No. 11,051.**

Fourth District.

September 3, 1969.

Rehearing denied October 27, 1969.

Mort A. Segall, of Champaign, for appellant.

Thomas, Mulliken & Mamer, of Champaign (Roger E. Haughey, of counsel), for appellee.

MILLS, J., delivered the opinion of the court.

Is this a products liability case, or one involving damages for injuries as the result of alleged negligence? Respective counsel for parties litigant completely disagree on the issue presented on review. We must necessarily look to the evidentiary background. The trial resulted in a hung jury, and the trial judge granted posttrial motion for judgment in favor of the defendant-appellee.

On December 2, 1964, appellant went to defendant's department store to make a purchase, and entered the building at the west entrance. The single inner door was hinged on the left as one faced it, was aluminum framed, totally glass paneled, had a rectangular shaped handle on the right-hand side, and swung toward the person entering the establishment. As he approached this inner door, appellant saw through the glass that a lady carry-

ing a parcel in her hand was coming out; so he stepped to the right of the door, grasped the door handle with his right hand, and intended to commence the opening of the door in a laudable and gallant social gesture. But the lady was apparently moving with "bargain day" zeal and pushed the crossbar on her side of the door in such manner as to fling the door open with greater force than anticipated. Appellant's fingers were caught between the door handle and the door itself from his position on the right, and as the door was hinged to swing to the left, the resulting arc twisted and injured the first three fingers of his right hand.

Appellant testified that he had no packages in his hands, that he used his right hand to open the door because he is right-handed, that he was not jostled or pushed, that he had used this type of door before and was familiar with its operation, that this was his customary way of approaching the door so that it would not hit him in the face, that he had traded at appellee's store five or six times prior to the occurrence, and that he had used this specific type of door before. The handle was a single aluminum plate bolted by connecting aluminum shafts to the right-hand frame of the door, in such a way as to leave approximately $1\frac{1}{2}$ inches of space between the plate and the frame. Appellant testified that he placed his hand on this door handle with the middle finger and ring finger resting on the upper support attaching the plate to the frame, and the index finger lipped over the top of the plate.

An officer of the glass company which sold and installed the door testified that his company had sold about 100 sets of the exact handle in the general community where defendant was located, and that the manufacturer of this handle began producing the product in 1958 or 1959. The architect for appellee said that there were other types of handles made by the same manufacturer,

including one that had a curvature of metal toward the inside of the door rail allowing no space between the door frame at its junction with the handle. The door handle involved here was selected primarily on the basis of design from an esthetic point of view. And as to functional design, the architect said there is no real standard in the door manufacturing industry.

An expert witness, a professor of mechanical engineering with a specialty in safety engineering, testified that he had made an examination and inspection of the door, that it was in good condition, that he found no defects and nothing out of order, and that it was reasonably safe for the purpose for which it was intended.

The general manager of appellee testified that the average traffic count in the store for 1966 was over 1 million persons per year, although that would be somewhat high for 1964. He further stated that only 10 percent of the traffic used the west entranceway in question. He inspected the door immediately after it was hung, and the door was operating properly. When routine inspections were thereafter made, the door continued to operate properly. It is interesting to note that the method for door-testing was "by opening and closing it." This criterion would appear to have some basis in fundamental logic.

■ Is this a products liability situation? Clearly, it is not. The most recent enunciation of decisional law in this arena is Williams v. Brown Mfg. Co., — Ill2d —, — NE2d — (1969), opinion filed May 28, 1969. In its comprehensive analysis of case law on strict liability, the court concisely declares:

> "There must be a defect in the product, it must be established as existing at the time of leaving defendant's control, and it must be such as renders the product unreasonably dangerous to the consumer."

This appeal does not assert the customary and usual context for a products liability consideration, i. e., a sale of the product to a buyer-consumer. But assuming, arguendo, that this distinction is not fatal to an application here of strict liability standards, we find not one jot of proof that the door handle was imperfect. The element of defect—the cardinal root from which all other tests of strict liability derive—is totally absent.

So, having determined that this is in fact an action for the recovery of damages for injuries suffered as a result of alleged negligence by the appellee in failing to maintain its business premises in a reasonably safe condition, what are the tests? They are simply this: An owner of a business establishment invites persons to come upon his premises to do business; once they do, the law creates a duty for the owner to make his establishment and premises safe by the use of ordinary and reasonable care. The general rule in applying this principle is that the use of an appliance or fixture in a business establishment may be continued, and no negligence will be imputed, where that appliance or fixture is not obviously dangerous and has been shown to be safe and adequate for its purpose by use over an extended period of time. As to notice, the store owner need not have it in actuality—he is charged with constructive notice of a defect which either would have been discovered through the exercise of reasonable inspection, or which might have been so discovered thereby. Indeed, such reasonable inspection is inherently a duty under the standard of ordinary and reasonable care. These are the obligations imposed by law upon a business, and we are unaware of adverse decisions. Todd v. S. S. Kresge Co., 303 Ill App 89, 24 NE2d 899; Placher v. Streepy, 19 Ill App2d 183, 153 NE2d 369.

Furthermore, the reported decisions demonstrate that the courts have been entombed by an avalanche of litigation involving injuries received by patrons

on business premises. As opined in Robinson v. Southwestern Bell Tel. Co., 26 Ill App2d 139, 167 NE2d 793, 794: "No liability is created by the mere occurrence, there must be some evidence of causation by a breach of duty of the defendant. That duty is to exercise ordinary care to keep its premises reasonably safe for the use of business invitees, and does not make a defendant an insurer of the safety of an invitee while on defendant's premises."

When appellant's evidence is measured by the yardstick here applicable, we fail to perceive even a scintilla of proof required by appellant's burden. An accident happened. This was proved. But more, much more, is needed to hold a store owner liable. No expert testimony was offered by appellant to even suggest a defect in the door handle, either by way of design or construction. On the other hand, appellee's architect and safety engineer gave proof that the handle was properly designed and constructed to make it safe for its intended purpose. The installer of the handle and the door showed that approximately 100 sets of the same handle had been installed in the immediate vicinity by his company alone, and upon inspection he found this particular door and handle in proper working condition. An officer of appellee inspected the door immediately after installation, and thereafter continued to routinely check it, each time finding it in proper functional use. Indeed, some 400,000 persons used the same door and handle for nearly four years without reported incident.

Appellant's brief argues that the handle "can plainly be seen" and that it "speaks for itself." We are in accord, but reach opposite conclusions. Certainly, if the handle was so defective as to be plainly seen, then appellant was obligated to observe the obvious, heed the cry of caution and proceed with care. By his own contention, he apparently was blind to that which he says he should have seen, turned a deaf ear to the warning that

he should have heard, and then advanced without prudence. He further argues that this handle as constructed and designed constituted "a dangerous trap." We differ. "He did what was normally anticipated one would do as one would approach a door. He then stood to one side of the door away from the direction in which the door would swing as it would open towards him, for the reason that he would not be hit in the face with the door as it opened. . . . There is nothing unforeseeable about this act. In fact, if plaintiff would have done anything else under the circumstances, it would have been abnormal conduct." Again, we vary.

How does one open a door? We doubt that it requires either a law degree or judicial experience to reach such an answer. If a door is hinged on the left, has a handle on the right-hand side of the frame, and swings to the left, we think it manifestly obvious that one approaching the door grasps the handle with the left hand, pulling it toward him and steps to the right to enter the enclosure. Whether he is left-handed or right-handed strikes us as totally immaterial. Furthermore, when one is opening a glass door through which he has unobstructed vision of others approaching the same fixture, he should be even more confident of his ability to open such a door with his left hand in the normal manner. Appellant here had both of his hands free, had used the door on prior occasions, was familiar with its operation, looked through the glass, saw a woman walking rapidly toward the door with a package in her hand and determined to extend a gesture of chivalrous assistance. Commendable. But then he chose to step to the right of a door that swings to the left, reached across, placed his right-hand fingers in an awkward position on the handle designed for left-hand usage, and by misjudging the speed of the woman patron and the force of her propulsion, was rewarded only by a painful experience.

We hold that the trial court properly entered post-trial judgment in favor of appellee, and that no verdict for appellant could ever stand on the evidence herein, pursuant to the test established in Pedrick v. Peoria & Eastern R. Co., 37 Ill2d 494, 229 NE2d 504.

Affirmed.

CRAVEN, P. J. and SMITH, J., concur.