ELEANORE KEEN, Plaintiff-Appellant, *v.* DOMINICK'S FINER FOODS, INC., Defendant-Appellee.

First District (3rd Division)    No. 76-1183

Opinion filed June 1, 1977.

SIMON, P. J., dissenting.

Richard A. Seltzer, of Chicago, for appellant.

Kralovec, Sweeney, Marquard & Doyle, of Chicago (George E. Sweeney and Edward V. Scoby, of counsel), for appellee.

Mr. JUSTICE McNAMARA delivered the opinion of the court:

The plaintiff, Eleanore Keen, filed suit against the defendant, Dominick's Finer Foods, Inc., seeking to recover for injuries allegedly sustained while using a shopping cart in a Dominick's store located in Highland Park, Illinois. Plaintiff filed a four-count complaint alleging theories of negligence, strict products liability, breach of implied warranty, and breach of duty of care by a bailor. The trial court granted Dominick's motion to strike all counts except that based upon negligence. Pursuant to Supreme Court Rule 304(a) (Ill. Rev. Stat. 1975, ch. 110A, par. 304(a), the trial court found no just reason for delaying enforcement or appeal from the order dismissing three counts of the complaint. Plaintiff has appealed solely from that part of the trial court's order dismissing the count in which she alleged a cause of action in strict tort liability.

In her complaint plaintiff charged that on January 21, 1975, she was shopping in a grocery store owned and operated by Dominick's. As she was pushing a shopping cart supplied by the store, the cart allegedly tipped over onto its side. Plaintiff was injured when she attempted to prevent the cart from overturning. Plaintiff further charged that at the time she was using the shopping cart, it was not reasonably safe for the use intended in that it was inclined to collapse in a manner which would cause it to roll onto its side and injure its user. In moving to dismiss the count in question, Dominick's maintained that it was not liable under the principles of strict products liability since the shopping cart could not be deemed a product for which Dominick's was responsible for placing into the stream of commerce. The trial court agreed with Dominick's contention and entered an order dismissing the count. The propriety of that order is at issue before us.

■■ The nature of a manufacturer's liability for placing a defective product into the stream of commerce was set out in *Suvada v. White Motor Co.* (1965), 32 Ill. 2d 612, 623, 210 N.E.2d 182, 188:

"The plaintiffs must prove that their injury or damage resulted from a condition of the product, that the condition was an unreasonably dangerous one and that the condition existed at the time it left the manufacturer's control. [Citation.]"

The rule promulgated in *Suvada* is in accordance with the Restatement (Second) of Torts §402A (1965), which defines that special liability which a seller incurs when his product causes physical harm to a user or consumer:

"(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

(a) the seller is engaged in the business of selling such a product, and

(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold."

■■ In *Dunham v. Vaughan & Bushnell Manufacturing Co.* (1969), 42 Ill. 2d 339, 247 N.E.2d 401, the court stated that *Suvada* applies with equal compulsion to all the parties in a chain who place the article into commerce. While liability does not depend upon whether there was an actual sales transaction (*Galluccio v. Hertz Corp.* (1971), 1 Ill. App. 3d 272, 274 N.E.2d 178), it is necessary that the party to be charged with liability be in the business of placing the allegedly defective product into the stream of commerce. (*Siemen v. Alden* (1975), 34 Ill. App. 3d 961, 341 N.E.2d 713.) Accordingly, it becomes apparent that the cornerstone of liability rests upon the defendant's active participation in placing the product into commerce for use and consumption by others. One of the underlying reasons for imposing strict liability is to ensure that losses are borne by those who have created the risk and subsequently reaped the profit of marketing the allegedly defective product. Liability will not be imposed upon a defendant who is not a part of the original producing and marketing chain. *Peterson v. Lou Bachrodt Cheverolet Co.* (1975), 61 Ill. 2d 17, 329 N.E.2d 785.

In the present case, plaintiff concedes that Dominick's is not in the business of either selling or renting shopping carts. She maintains, however, that although Dominick's gratuitously furnishes the carts to its customers, such is done as an incident of the sale of the items which constitutes Dominick's business. In attempting to hold Dominick's strictly liable, plaintiff relies upon the case of *Bainter v. Lamoine LP Gas Co.* (1974), 24 Ill. App. 3d 913, 321 N.E.2d 744. In that case this court permitted a cause of action in strict products liability against a defendant who supplied a defective tank for storage of gas sold to the plaintiff. The tank was characterized as an incident of the sale of the gas and the consideration given for the gas was deemed to include the use of the tank.

■■ The facts in *Bainter* differ demonstrably from those in the present case. In *Bainter* the fluidity of the product compelled supplying the tank as a necessary concomitant of the sale of gas. The shopping cart, on the other hand, can be classified only as a convenient receptacle which the customer may temporarily utilize to move groceries to the checkout or outside to the customer's automobile. Not every customer will use a

shopping cart. It is our opinion that to hold Dominick's liable under the principles of strict products liability would require an extension of those principles which neither the supreme court in *Suvada* nor this court in *Bainter* envisioned. The instant case does not present the *Bainter* situation where an allegedly defective container which is an integral part of the product disseminated by defendant causes injury or damage. In such a case the container may well be deemed incident and necessary to the sale of the product. In the present case, plaintiff's use of the allegedly defective shopping cart could only be considered as a use of a convenience furnished by Dominick's to facilitate its customers' shopping. Any mishap which might occur from availing oneself of such a convenience does not render the store liable under the principles of strict products liability. In this case, the allegedly defective shopping cart was placed into the stream of commerce by the parties responsible for its distribution to Dominick's. The store like its customer is merely a user of the shopping cart.

Public policy considerations do not demand that the duty of a storekeeper to keep its premises in a safe condition be elevated beyond the traditional standard of reasonable care. (*Ryan v. Robeson's, Inc.* (1969), 113 Ill. App. 2d 416, 251 N.E.2d 545.) Plaintiff is not denied a cause of action in negligence nor is she precluded from establishing a cause of action in strict products liability against the manufacturer of the shopping cart and others who placed the shopping cart into the stream of commerce and reaped the profits therefrom. We simply hold that Dominick's cannot be considered to be part of the distributive chain within the ambit of the principles of strict products liability.

Plaintiff's reliance upon this court's holding in the case of *Nowakowski v. Hoppe Tire Co.* (1976), 39 Ill. App. 3d 155, 349 N.E.2d 578, is misplaced. In that case plaintiff brought suit based on negligence and strict products liability against a company engaged in the business of repairing, reconditioning, and selling tires. Plaintiff was injured when a "run-out" tire repaired and supplied by defendant exploded as he mounted the tire on a vehicle owned by plaintiff's employer. Defendant contended that the doctrine of strict liability did not apply to it because it was essentially a service organization engaged in the business of repairing and rebuilding equipment owned by its customers. There was evidence which established that defendant often substituted customer equipment with parts from its own stock. On the occasion of plaintiff's injury, defendant had substituted its own parts instead of returning those of plaintiff's employer. For that reason, defendant was found to be a supplier who had placed a defective product into the stream of commerce and, therefore, liable under the principles of strict products liability.

For the reasons stated, the order of the circuit court of Cook County dismissing the count of the complaint founded on strict products liability is affirmed.

Order affirmed.

JIGANTI, J., concurs.

Mr. PRESIDING JUSTICE SIMON, dissenting:

The plaintiff should be permitted to proceed to trial on her strict products liability count. Dominick's was part of the stream of commerce flowing from the cart's manufacturer to the plaintiff. The cart was intended for use by customers of grocery supermarkets. It reached the plaintiff through Dominick's. Therefore, the stream of commerce did not stop, as the majority views it, with the parties who distributed the cart to Dominick's, but continued until the cart reached the customers who were intended to use it and for whose use Dominick's supplied it. The approach of the majority is that Dominick's is the consumer or user of the carts. On the other hand, I regard Dominick's as the supplier of the carts to its customers and, therefore, as a conduit in the marketing chain which brought the carts to their ultimate users, Dominick's customers.

Although, as the majority points out, Dominick's neither sells nor rents shopping carts, it does supply them for its customers. It would be virtually impossible for a customer to make substantial purchases at Dominick's supermarts without the use of a cart. The customer may be regarded as paying for this use because the cart is a cost of doing business which no doubt is reflected in the charge Dominick's makes for its merchandise. The cart not only provides a convenience for Dominick's customers, but also increases Dominick's sales and profits. As the majority states, one of the reasons for imposing strict liability is to ensure that losses are borne by those who reap the profit of marketing an allegedly defective product. By supplying the carts, Dominick's fits within this rationale.

The majority cites *Ryan v. Robeson's, Inc.* (1969), 113 Ill. App. 2d 416, 251 N.E.2d 545, for the proposition that public policy does not require a shopkeeper to adhere to a higher standard than reasonable care in keeping his premises safe. I do not read the opinion in that way. After reviewing the evidence introduced at trial, the court did not apply products liability rules because it did not find "one jot of proof that the door handle was imperfect." The court said: "The element of defect—the cardinal root from which all other tests of strict liability derive—is totally absent." Moreover, that case involved a glass-paneled door leading into the store premises. I believe that in the case of a door, fixture, shelf or other stationary part of the premises, the shopkeeper is the ultimate user rather than a supplier to his customers. And, unlike a shopping cart, such

fixtures and appliances are not provided for a customer's exclusive use and control while shopping.

Neither is *Peterson v. Lou Bachrodt Chevrolet Co.* (1975), 61 Ill. 2d 17, 329 N.E.2d 785, relevant to this appeal. The *Peterson* complaint was dismissed prior to trial because the used-car dealer was outside the original producing and marketing chain when he sold a defective used car. Dominick's, as I view its role, was in the original chain of distribution which brought the cart to the plaintiff.

It is important to bear in mind that the issue before us in this case is not whether the plaintiff could recover under a strict products liability theory, but only whether her complaint stated a proper cause of action on that count. For the plaintiff to prevail under strict products liability, she would have to establish that the defect which caused the cart to collapse existed at the time the cart left the control of the manufacturer or that Dominick's caused the defect in question and that the condition of the cart when it was supplied to her was unreasonably dangerous. These, however, are matters of proof which are not raised by this appeal because there has been no trial.

I believe the order dismissing the count alleging strict products liability should be reversed so that the plaintiff can have a trial on that theory.