**ABCO METALS CORP.,**
Plaintiff-Appellant,

v.

**EQUICO LESSORS, INC.,**
Defendant-Appellee.

No. 83–1152.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 16, 1983.

Decided Nov. 9, 1983.

See also, 36 B.R. 344.

C. Philip Curley, Burke & Smith, Chtd., Chicago, Ill., for plaintiff-appellant.

Stephen R. Swofford, Hinshaw, Culbertson, Moelmann, Hoban & Fuller, Chicago, Ill., for defendant-appellee.

Before BAUER and WOOD, Circuit Judges, and NEAHER, Senior District Judge.[*]

NEAHER, Senior District Judge.

Plaintiff, Abco Metals Corp. (Abco), appeals the dismissal of its amended complaint against defendant Equico Lessors, Inc. (Equico).

The facts of the transaction are not in dispute. Abco is a wholesale and retail processor of non-ferrous scrap metal. It approached J.W. Imports Co., Inc. (J.W.), the exclusive North American distributor for Laursens, a Danish corporation, about purchasing a wire chopper. The machine strips insulation from a metal conductor. The parties agreed that Laursens and J.W. would furnish a wire chopper capable of

[*] The Honorable Edward R. Neaher, Senior District Judge for the Eastern District of New York, is sitting by designation.

processing 10,000 pounds per hour of various sized wires and cables for $151,000.00.

Equico was invited into the transaction by Abco solely to purchase the machine and lease it to Abco. They agreed upon a down payment of $55,152.50 followed by sixty (60) monthly payments of $2,459.00 each. They also executed a purchase option by which Abco could take title to the chopper at the end of sixty months for $10,000.00.

The chopper never functioned according to Abco's specifications. Despite assurances, J.W. and Laursens did not cure the defects and consequently, Abco brought this diversity action against them. Equico was added as a defendant by way of an amended complaint filed in response to J.W.'s motion to dismiss for failure to join an indispensable party, Equico.

■ Abco contends that the trial court erred in not determining whether the transaction was a sale or a lease. The argument proceeds upon the premise that under the law of Illinois, a seller is strictly liable for a defective product that it places in the stream of commerce,[1] and that the complaint alternatively alleged a sale. In *Peterson v. Lou Bachrodt Chevrolet Co.*, 61 Ill.2d 17, 329 N.E.2d 785 (1975), the court declined to apply the principle of strict products liability to a used car salesman, who had sold an allegedly defective automobile that had injured the plaintiff. The court noted that the defendant was "outside of the original producing and marketing chain." 329 N.E.2d at 786. Subsequent case law reaffirms the continuing vitality of this test, which focuses upon the overall role of the alleged tortfeasor in moving the defective product through the chain of production, marketing, and distribution. *E.g., Hammond v. North American Asbestos Corp.*, 97 Ill.2d 195, 73 Ill.Dec. 350, 454 N.E.2d 210 (1983) (the role of the defendant, an agent/broker, in "marketing" the asbestos which caused plaintiff's injuries); *accord Domine v. Fulton Iron Works*, 76 Ill.App.3d 253, 32 Ill.Dec. 72, 395 N.E.2d 19,

23 (1st Dist.1979) ("The cornerstone of strict liability rests upon the defendant's active participation in placing the allegedly defective product into commerce (citation omitted)."). Thus, "[i]mposition of strict liability upon sellers (wholesalers and retailers), as well as upon manufacturers, arises from their 'integral role in the overall producing and marketing' of a defective product. (*Dunham v. Vaughan & Bushnell Mfg. Co.* (1969), 42 Ill.2d 339, 344, 247 N.E.2d 401, 404.) A seller who does not create a defect, but who puts the defective product into circulation, is still responsible in strict liability to an injured user. Because the ultimate loss will ordinarily be borne, through indemnification, by the party that created the defect [here, Laursens], the public policy concern is really who, between the injured user and the seller, should bear the initial loss. The seller is in a position to prevent a defective product from entering the stream of commerce. The seller may either adopt inspection procedures or influence the manufacturer to enhance the safety of a product. Moreover, the seller is generally better able to bear and distribute any loss resulting from injury caused by a defective product." *Crowe v. Public Building Commission of Chicago*, 74 Ill.2d 10, 23 Ill.Dec. 80, 383 N.E.2d 951, 952.

In *Crowe*, which involved the application of strict products liability to a former lessor of the defective product, the court also noted:

"The nature of a commercial transaction by which a product is placed in the stream of commerce is irrelevant to the policy considerations which justify strict liability. A lessor is subject to strict liability because his position in the 'overall producing and marketing enterprise' (citation omitted) is no different from that of a seller. Typically, the commercial lessor is within the original chain of distribution and reaps a profit by placing a product in the stream of commerce. At the point in the chain of distribution

*Heublein, Inc.*, 673 F.2d 189, 190 (7th Cir.1982).

---

1. Illinois has adopted section 402A of the Second Restatement of Torts. *Garrison v.*

where the product passes through the hands of the lessor, he becomes as capable as a seller to prevent a defective product from proceeding through the stream of commerce." 383 N.E.2d at 953.

The issue, therefore, is whether Equico occupied a relationship to the transaction between Abco and the manufacturer of the defective product such that strict products liability should attach. *E.g., Connelly v. Uniroyal, Inc.,* 75 Ill.2d 393, 27 Ill.Dec. 343, 389 N.E.2d 155, 162–63 (1979), *appeal dismissed,* 444 U.S. 1060, 100 S.Ct. 992, 62 L.Ed.2d 738 (1980) (licensor, who merely authorized the manufacturer's use of its trademark, was an integral part of the marketing process).

The pleadings reveal that Equico's part in the overall production, marketing, and distribution of the wire chopper was virtually nonexistent, *see Hinojasa v. Automatic Elevator Co.,* 92 Ill.App.3d 351, 48 Ill.Dec. 150, 416 N.E.2d 45, 49 (1st Dist.1980) (installer of a defective product (elevator) is not subject to strict products liability); *Domine v. Fulton Iron Works, supra* (corporate successor to the manufacturer of a defective product is not subject to strict products liability); *Keen v. Dominick's Finer Foods, Inc.,* 49 Ill.App.3d 480, 7 Ill.Dec. 341, 364 N.E.2d 502 (1st Dist.1977) (plaintiff may not recover from the supermarket for injuries caused by a defective bascart); it merely furnished the financial means for Abco, J.W., and Laursens to consummate their agreement. Moreover, Abco's complaint states that J.W. and Laursens "were informed that the arrangement with Equico was strictly for financing purposes." The surrounding circumstances support this allegation.

Abco contacted J.W., from whom it had purchased a smaller capacity wire chopper manufactured by Laursens.[2] Abco's president "specifically advised" representatives of J.W. and Laursens of its needs. The representatives respectively agreed to manufacture and sell the machine for $151,-000.00. After the die was cast concerning the manufacturing arrangements for the machine, Equico entered the transaction, wholly unable to influence or control the prior bargain; and understandably so, because the machine was to be manufactured to Abco's specifications. The inescapable conclusion is that Equico had no input into the production or marketing of this machine. It was not, therefore, in the original chain of distribution and was not a party capable of preventing a defective product from entering the stream of commerce. Any profit it reaped derived from having placed its money, and not the defective product, into the stream of commerce.

> "Strict products liability is not a doctrine of absolute liability entitling any person harmed while using a product to recover from any member of the production and distribution group. It does not make a manufacturer, distributor, or retailer an insurer of the consumer's safety. It is liability without negligence, but it is not liability without fault." *Mullen v. General Motors Corp.,* 32 Ill.App.3d 122, 336 N.E.2d 338, 344 (1st Dist.1975) (citations omitted).

As a "seller" or "lessor", Equico's connection to this transaction is too remote to give rise to strict products liability under Illinois law.

In arguing this appeal, the plaintiff has attempted to treat the transaction generically, as did the district court.[3] We are, of course, unable to predict with certainty whether the Supreme Court of Illinois will or will not categorically exempt financial lessors from the ambit of strict products liability, as has occurred in other jurisdictions. *Cole v. Elliott Equipment Corp.,* 653 F.2d 1031, 1034–35 (5th Cir.1981) (applying Texas law); *Nath v. National Equipment Leasing Corp.,* 497 Pa. 126, 439 A.2d 633 (1981); *Brescia v. Great Road Realty Trust,* 117 N.H. 154, 373 A.2d 1310 (1977). The numerous possible permutations for contractual commercial financing relationships, as exemplified by the terms of the contract

---

2. There is no allegation that Equico had any knowledge of or participation in this earlier transaction.

3. *See Abco Metals Corp. v. J.W. Imports Co., Inc.,* 560 F.Supp. 125, 130–31 (N.D.Ill.1982).

in this case, favor a more flexible approach, which we think is followed in Illinois. Under Illinois law, the label accorded the transaction is of little consequence for purposes of strict products liability; rather, an injured user of a defective product must plead and prove that the defendant was a part of the original chain of production, marketing, or distribution of the product. We conclude that the Illinois courts would find that Equico, which merely provided the financial means for the transaction, was not a part of that chain.[4] Accordingly, the judgment of the district court dismissing the complaint against Equico is affirmed.

4. Although section 402A(1)(a) attaches liability "if the seller is engaged in the business of selling such a product", *Daniels v. McKay Machine Co.,* 607 F.2d 771, 775–76 (7th Cir.1979), the Illinois courts, as exemplified by *Peterson v. Lou Bachrodt Chevrolet Co., supra,* have not applied this requirement literally. Certainly, a used car sales establishment would be in the business of selling used automobiles. Abco attempts to make an issue of whether Equico was in the business of selling or leasing wire choppers by having alleged that it is in the equipment leasing business. We need not consider this issue. The Illinois courts simply do not narrowly characterize or "pigeon hole" transactions for the purposes of applying strict products liability. *See Crowe v. Public Building Commission of Chicago, supra.*