**Lucy D. DOMINGUEZ MOJICA, et al., Plaintiffs,**

v.

**CITIBANK, N.A., Defendant.**

**Civ. No. 92–1281(PG).**

United States District Court, D. Puerto Rico.

Sept. 2, 1993.

---

Howard Charles, Hato Rey, PR, for plaintiffs.

Charles DeMier, Hato Rey, PR, for defendant.

### *OPINION AND ORDER*

PEREZ–GIMENEZ, District Judge.

Plaintiffs, Lucy Domínguez Mojica, Michelle Sepúlveda, and Vanessa Sepúlveda, brought a tort action in the United States District Court for the District of Puerto Rico against defendant, Citibank, N.A. Plaintiff Domínguez was involved in an accident with Miriam Rosario Pérez, who was leasing a car from the defendant, and both plaintiffs and defendant stipulate that Ms. Rosario (the "lessee") was driving in a negligent manner

---

at the time of the accident. However, plaintiffs chose to sue only Citibank, pursuant to sections 13–101 (9 L.P.R.A. § 1751) and 1–123 (9 L.P.R.A. § 323) of the Vehicle and Traffic Law of Puerto Rico of 1960.

On April 22, 1993, plaintiffs filed a motion *in limine* requesting that this Court declare that as a matter of law Citibank is liable to the plaintiffs for damages suffered as a result of the accident. The Court denied plaintiffs' motion on June 17, 1993.

Now plaintiffs seek a motion pursuant to Fed.R.Civ.P. 60(b), requesting that the Court reconsider its denial of the previous motion *in limine* in light of additional legal arguments. Plaintiffs assert that the Court should declare Citibank liable to the plaintiffs as a matter of law under 9 L.P.R.A. § 1751 because Citibank is the registered owner of the vehicle driven by Ms. Rosario. In opposition, defendant Citibank contends that it should not be held liable for plaintiffs' damages because it is only the financial lessor of the vehicle, and that it holds legal title to the car only in order to guarantee that the lessee will comply with the terms of the lease contract.

The Supreme Court of Puerto Rico has not specifically resolved the question of whether 9 L.P.R.A. § 1751 applies to the registered owner of a vehicle, where the owner is a financial lessor that has retained legal title to the vehicle under the terms of a long-term lease contract. However, this Court has researched the issues presented by the case at bar, and it will apply the substantive law of Puerto Rico,[1] focusing primarily on decisions of the Supreme Court of Puerto Rico, in order to make a decision in harmony with the jurisprudential trend of the Supreme Court.

### BACKGROUND

The lessee in this case, Ms. Rosario, entered into a long-term leasing contract with Citibank, the lessor. The lessee selected a car and Citibank bought the car for the lessee. The lessee then took sole possession and control of the car; Citibank never took delivery or possession. However, Citibank retained the title to the car as security, in order to insure that the lessee would comply with the terms of the lease contract.

In the contract, Citibank expressly required that the lessee purchase insurance providing for bodily injury liability and property damage liability. At the time of the accident, the lessee had an insurance policy which covered bodily injuries, with a limit of one million dollars.

On December 6, 1991, Ms. Rosario was driving the leased car negligently and struck plaintiff Domínguez's vehicle. Domínguez brought a tort action for damages suffered in the accident against Citibank, pursuant to section 13–101 of the Vehicle and Traffic Law of Puerto Rico, which provides:

> The owner of a motor vehicle shall be liable for damages and losses caused through guilt or negligence by operation of such vehicle by or under the physical and actual control of any person who, for the main purpose of operating it, or of having or allowing it to be operated by a third person, obtains possession thereof by express or tacit authorization of its owner. In any event it shall be assumed, unless otherwise proven, that any person operating or having in his possession or under his control a motor vehicle has obtained possession thereof with the authorization of its owner for the main purpose of operating it or having or allowing it to be operated by a third person.

> The person for whose negligence the owner of a vehicle is to answer under the provisions of the preceding paragraph shall be bound to indemnify said owner.

No. 141 of July 20, 1960, 9 L.P.R.A. § 1751. Section 1–123 defines "owner" as "any natural or artificial person in whose name a vehicle is registered in the Department." 9 L.P.R.A. § 323. The vehicle in question is registered in Citibank's name. Therefore, plaintiffs argue that as the registered owner of the vehicle, Citibank is liable for plaintiffs' damages under 9 L.P.R.A. § 1751 since it voluntarily authorized the lessee to use the car.

---

1. A federal court sitting in diversity must apply the substantive law of the forum state as its rule of decision. *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

Defendant Citibank asserts that plaintiffs' argument leads to an absurd result, because it has only acted as financier of the car sale, while Ms. Rosario has had sole possession and control of the vehicle since the inception of the finance lease. Furthermore, defendant argues that the plaintiffs could easily sue the lessee and her insurance carrier since the lessee has a substantial insurance policy and thus there is no need to sue the lessor to recover compensation for plaintiffs' alleged injuries.

## DISCUSSION

The Supreme Court of Puerto Rico, although it never has confronted directly the question of the present case, did perform critical research of the history of 9 L.P.R.A. § 1751 and of the financial leasing industry which lays the foundation for this Court's opinion.

The Supreme Court discussed the history and purpose of 9 L.P.R.A. § 1751 in *Cordero Santiago v. Lizardi Caballero*, 89 P.R.R. 148 (1963). In *Cordero*, the Court affirmed a judgment for damages against the owner of a car, where someone else borrowed the car and drove negligently, causing an accident which damaged the plaintiff's vehicle. The Court held that according to section 13–101 of the Vehicle and Traffic Law (9 L.P.R.A. § 1751), "the mere possession, voluntarily authorized, of a motor vehicle is sufficient to impose liability upon its owner." *Id.* at 160. Taken at face value, *Cordero* would seem to weigh against Citibank, the registered owner in the present case, since it voluntarily leased the vehicle which caused the accident.

However, it is important to note the context in which the *Cordero* opinion was written. Before *Cordero*, if a car owner lent his car to someone who then drove negligently and injured a third party, the owner would only be held liable if the negligent operator was his agent or employee in the discharge of employment duties. *Kirchberger v. Gover*, 76 P.R.R. 851 (1954); *Usera v. González*, 74 P.R.R. 454 (1953); *Díaz v. Iturregui*, 72 P.R.R. 191 (1951). Thus apart from employ-

ment situations, car owners had virtually no incentive to "think twice" about the consequences of loaning their cars to "person[s] lacking skill, good judgment, circumspection, or perhaps with defective eyesight or some other physical impairment." *Cordero*, 89 P.R.R. at 156. Thus a change in the interpretation of section 1751 was necessary.

In passing what was to become 9 L.P.R.A. § 1751, the legislature was most concerned with situations where "the vehicle is given to a person who has no economic resources with which to pay for the damages caused." *Id.* The *Cordero* Court wanted to support the legislative purpose[2] for section 1751, which was "to guarantee to any person the reparation of the damages caused by the culpable or negligent operation of a motor vehicle whenever the possession thereof was voluntarily delivered by the owner." *Id.* at 155. The *Cordero* opinion, therefore, was in line with the legislative interest in protecting injured third parties. However, at that time the Court did not contemplate the effect of their decision on finance leases, which had not yet become popular in Puerto Rico.

Many years later, the Supreme Court acknowledged leasing as a "new form of financing" in *Meyers Bros. Parking System v. Gelco*, 114 P.R.R. 149, 154 (1983). The initial facts of *Meyers* are similar to those in the present case. In *Meyers*, Meyers Brothers (the lessee) entered into a long-term leasing contract with Gelco (the financial lessor), in which the parties agreed that Gelco would purchase a car for Meyers and then transfer it to the lessee, in exchange for a monthly "rent." Meyers selected an automobile directly at a car dealership (Trébol Motors), without any participation by Gelco. Meyers discovered that the car had mechanical problems, and Gelco instructed the lessee to go to Trébol to have the car defects repaired. After Trébol was unable to repair the defects, Meyers sued Gelco, seeking recision of the leasing contract. The *Meyers* Court affirmed the partial summary judgment granted by the lower court, in favor of the lessor.

---

**2.** "It is a cardinal principle of hermeneutics that words, the language of a law, must be given the interpretation which validates the intent of the

Legislature upon approving the measure." *Rivera Maldonado v. Puerto Rico Housing Authority*, 87 P.R.R. 429, 431 (1963).

However, the *Meyers* decision was a limited one, because the main question was whether a clause in the lease contract was valid, one which exempted Gelco from liability in the case of vehicle defects. The Court held that the clause was not contrary to public interest[3], because the lessee was able, under the contract, "to avail itself of all the warranties pertaining to it, vis-a-vis the manufacturer and the supplier." *Id.* at 160. The Court also based its decision on the fact that "Gelco's function with regard to the property was to facilitate the financing of the transaction." *Id.* Thus the tangential status of the financial lessor to the transaction, as well as the lessee's ability to seek remedies from other interested parties, motivated the Supreme Court's decision.

The *Meyers* opinion is most valuable for its description of the leasing industry, because the Court clearly recognized that the finance lease is a special kind of contract that must be thought of differently from other contracts:

> Many of the problems surrounding the institution of leasing result from the insistence of some commentators to force it into the model of other types of contracts. The leasing contract ... contains elements of other legal concepts, but is different from them. The truth is that it cannot be fully matched, as it has been attempted sometimes, with the pure lease, the lease-sale, the depositum, the loan, the stipulation on behalf of a third person, or other familiar, germane legal concepts, even though it at times shares some of their characteristics. None of these fits the bill. The more generalized opinion at present, the one which we favor, is that it is an *atypical, sui generis contract that is the result of the changing reality of the business world.*

*Id.* at 155–56 (emphasis added) (citation omitted). Due to other unresolved issues, the Court did not make a final determination on the status of the finance lease, but it insinuated that a different set of standards was necessary to govern this new type of contract.

It is therefore unlikely, considering the Supreme Court's assessment of the lease arrangement in *Meyers*, that it would judge financial lessors, who hold title to an automobile solely for security reasons, as equal to regular "owners" and thus equally liable under 9 L.P.R.A. § 1751. This position is supported by the Court's discussion of the typicality of clauses which "release" the financing company from liability:

> The reason for [release clauses] ... may be easily understood. The basic business of [the financial lessor] ... is to provide financing. The purchase of equipment and its leasing to a third person are subsidiary operations. In the United States, the clauses releasing the financing company from all liability arising from its status as owner and lessor of the property are a usual part of the contract. All risks are normally transferred to the lessee, except those concerning financing.

114 P.R.R. at 158. The Court also compared release clauses in finance leases in countries such as Spain, France, and West Germany, and found them to be quite similar. *Id.* at 158–59. Its recognition of release clauses as valid, particularly those which release the lessor from liability arising from its status as owner, suggests that the Court would not hold financial lessors liable in situations like the present case.

Decisions from other United States jurisdictions support the proposition that financial lessors who hold a naked legal title to an automobile, and who cannot control how the car is used, should not be held liable for injuries to third parties caused by the fault or negligence of another who *does* control the car. For instance, in *Lee v. Ford Motor Co.*, 595 F.Supp. 1114 (D.D.C.1984), the plaintiff was seeking to recover damages for injuries sustained by a child when she was struck by a vehicle driven by a federal employee. The plaintiff sued Ford, which was leasing the vehicle to a federal agency, under an owner

---

**3.** Since the finance lease is not governed by special legislation in Puerto Rico, it is governed by the principle of business autonomy prescribed in art. 1207 of the Civil Code, 31 L.P.R.A. § 3372, which provides that "[t]he contracting parties may make the agreement and establish the clauses and conditions which they may deem advisable, provided they are not in contravention of law, morals, or public order."

liability statute, because Ford held the legal title to the car. The district court granted Ford's motion for summary judgment, holding that since Ford had no immediate right to control the use of the vehicle, it could not be held liable as an "owner" under the statute.

Products liability cases also support the exemption of financial lessors from liability normally imposed on owners; the "control" principle applies here as well. In *Abco Metals Corp. v. Equico Lessors, Inc.*, 721 F.2d 583 (7th Cir.1983), Abco (the lessee) wanted to buy a wire chopper from a foreign company, and it invited Equico (the lessor) into the transaction "solely to purchase the machine and lease it to Abco." *Id.* at 584. When the chopper, which did not function correctly, was not fixed by the manufacturer, Abco brought suit against several defendants including Equico. The district court dismissed Abco's suit against Equico, and the Seventh Circuit Court of Appeals affirmed, holding that strict products liability did not apply to Equico, since it merely provided the financial means for Abco to acquire the chopper:

> Equico entered the transaction, wholly unable to influence or control the prior bargain [between Abco and the manufacturer]; and understandably so, because the machine was to be manufactured to Abco's specifications. The inescapable conclusion is that Equico had no input into the production or marketing of this machine. It was not, therefore, in the original chain of distribution and was not a party capable of preventing a defective product from entering the stream of commerce.

*Id.* at 585. Thus Equico, which had no *control* over the production or use of the product, was not held liable for its malfunction. Similarly, it seems that Citibank should not be held liable for the negligent driving of the lessee, because it had no control over the production or use of the car which caused the accident.

Another case provided more reasons to exempt a financial lessor from strict products liability. In *Nath v. National Equipment Leasing Corp.*, 282 Pa.Super. 142, 422 A.2d 868 (1981), an employee who was injured while using a machine that was leased to his employer sued the machine lessor. The *Nath* court held that a lessor in a finance lease is not subject to strict products liability, because it does not market or supply the product, but rather is merely a financier who enables the lessee to acquire the product. The court gave four policy reasons for its decision: 1) the finance lessor, in most cases, "is not the only member of the marketing chain available to the plaintiff for recovery;" 2) imposing strict liability on a finance lessor will not increase safety, because "[t]he finance lessor does not take actual possession of the equipment leased, and generally lacks the expertise necessary to detect or prevent product defects;" 3) the lessee is in a far better position "to detect and prevent use of a defective product than is the finance lessor, for it is the lessee who selects the product, takes actual possession of it, maintains it, and in general has expertise with respect to it;" and 4) while the finance lessor can increase the amount of rent charged to compensate for strict liability for injuries, the extra charges "would appear to penalize the finance lessee, a consumer of the product, rather than the parties who manufactured or sold the product." *Id.* 422 A.2d at 875–76.

The policies propounded in *Nath* are clearly applicable to the present case. First, Citibank is not the only party which the plaintiffs could sue; the lessee has a substantial insurance policy, and the plaintiffs could just as easily have sued the lessee and her insurance carrier. Second, holding Citibank liable for lessee's negligence would not promote increased safety, the desire of the legislature that passed 9 L.P.R.A. § 1751; in fact, the plaintiffs' desired result would seem to serve as a negative incentive, because lessees will not be induced to drive more carefully if they are not held liable for their own negligence. Third, the lessee, and not the lessor, is in a better position to prevent the "circulation of defective products;" the lessee has full control over the car, and thus can take steps to detect its defects, and can make sure that it is driven correctly. Finally, imposing strict liability on financial lessors will adversely affect prospective lessees in Puerto Rico, due to higher "rents" which will price them out of the leasing market, or because there will be fewer companies (perhaps none) willing to leave themselves open to liability for the acts of their lessees.

A Florida case provides a clear statement of the idea which forms this Court's opinion. In *Palmer v. Evans*, 81 So.2d 635 (Fla.1955), the court stated:

> [T]he rationale of our cases which impose tort liability upon the owner of an automobile operated by another ... would not be served by extending the doctrine to one who holds mere naked legal title as security for payment of the purchase price. In such a titleholder, the authority over the use of the vehicle which reposes in the beneficial owner is absent ... Moreover, in jurisdictions having statutes making the owner liable for the negligence of another driving his car with his consent, the term "owner" has been universally construed to eliminate those who hold nothing more than naked legal title.

*Id.* at 637 (as cited in *Perry v. G.M.A.C. Leasing Corp.*, 549 So.2d 680, 682 (Fla.1989)). In congruence with the jurisprudential trend of the Supreme Court of Puerto Rico and many other jurisdictions, this Court holds that defendant Citibank is not liable for the damages caused by the negligent driving of the lessee.

For the foregoing reasons, this Court upholds its DENIAL of plaintiffs' motion in limine of June 17, 1993.

**IT IS SO ORDERED.**