LINDA M. DRALEAU & another[1] *vs.* CENTER CAPITAL
CORPORATION & another[2]; MILES KEDEX CO., INC.,
third-party defendant.[3]

No. 98-P-2380.

Worcester. May 15, 2000. - August 1, 2000.

Present: ARMSTRONG, C.J., GILLERMAN, & DUFFLY, JJ.

*Uniform Commercial Code,* Warranty, Security interest. *Warranty. Sale,* War-
ranty. *Contract,* Equipment lease. *Statute,* Construction. *Words,* "Lessor."

A so-called finance lessor that executed a lease of a machine, which was,
considering the terms and circumstances, merely a financial vehicle
intended to create a security interest in favor of the finance lessor, was not
a "lessor" within the meaning of G. L. c. 106, § 2-318, and thus could not
be held liable on a claim of breach of the implied warranty of merchant-
ability. [785-788]

CIVIL ACTION commenced in the Superior Court Department on
August 4, 1994.

The case was heard by *Thayer Fremont-Smith,* J., on a mo-
tion for summary judgment.

*Michael D. Kelly* for the plaintiffs.

*Bradley A. MacDonald* for Center Capital Corporation.

GILLERMAN, J. On January 13, 1992, Linda M. Draleau's hand
was caught and injured in the rollers of a flatboard wrapper
machine (machine) which had been reconditioned by R.S.

---

[1]Her husband, Armond Draleau.

[2]R.S. Northern Co. (Northern). Center Capital Corporation (Center Capital)
also cross-claimed against Northern. The cross claim became moot when
judgment entered for Center Capital. See note 3, *infra.* This appeal, however,
does not affect the Draleaus' claim against Northern.

[3]Center Capital filed a third-party claim against Miles Kedex Co., Inc.,
which became moot when the judge allowed Center Capital's motion for sum-
mary judgment. Subsequently, another judge allowed Center Capital's motion
for a separate and final judgment. See Mass.R.Civ.P. 54(b), 365 Mass. 821
(1974).

Northern Co. (Northern). Northern had sold the machine to the defendant Center Capital Corporation (Center Capital), doing business as Centerbank Capital. Center Capital then leased the machine to the plaintiff's employer, Miles Kedex Co., Inc. (Miles), a manufacturer of paper products. The complaint alleges, inter alia, that Center Capital breached its implied warranties of merchantability and fitness for a particular purpose, as a result of which the plaintiff, while in the exercise of due care, was injured. The judge allowed Center Capital's motion for summary judgment, and another judge entered a separate and final judgment in favor of Center Capital. The plaintiff appealed. We consider the question — apparently undecided in Massachusetts — whether the plaintiff, alleged to be an innocent third party, may recover from Center Capital, the lessor.

Additional undisputed facts are these. Sometime in 1990, Stephen Muller, president of Miles, approached Northern about the purchase of the machine. After a purchase price was agreed upon, Muller talked with Center Capital about financing the purchase; a lease was agreed upon as the appropriate financing vehicle.[4] The necessary documents were executed, and the machine was shipped directly from Northern to Miles.

A "master lease agreement" was signed by the parties and dated October 9, 1990. This agreement included a disclaimer of all warranties (viz.: "NO WARRANTIES BY LESSOR. LESSOR, NEITHER BEING THE MANUFACTURER OF, NOR A DEALER IN, THE EQUIPMENT, MAKES NO WARRANTY TO ANYONE AS TO ANY MATTER WHATSOEVER, EXPRESS OR IMPLIED . . . ." etc.); a provision that the lease could not be canceled by the lessee, and that the "Lessee's obligations under the Lease including . . . the obligation to pay rent, are absolute and unconditional and shall continue without any claim, defense, set-off, [or] counterclaim . . . ." etc.; a provision for the comprehensive indemnification of the lessor which was to survive the termination of the lease; and a provision that Miles "shall bear all risks of loss of and damage to" the machine, but that no such loss or damage would relieve Miles from the obligation to pay rent when due.

Attached to the master lease agreement was a "lease schedule." The lease schedule described the machine ("Re-

---

[4]See *Patriot Gen. Life Ins. Co.* v. *CFC Inv. Co.*, 11 Mass. App. Ct. 857, 860 (1981) ("Tax and accounting considerations have caused a considerable burgeoning in the volume of equipment leasing").

manufactured 4FW-2 Flat Board Wrapper"), the "vendor: R.S. Northern Co.," a minimum lease term of sixty months; monthly rent to be paid at the rate of $406.18; and an "Expiration Option[]: At the end of the Lease Term all of the Equipment *must be purchased for $1.00*" (emphasis added). The lease schedule was signed by Muller as president of Miles.

Financing statements under the Uniform Commercial Code were filed in Connecticut identifying Center Capital as the lessor and Miles as the lessee. The financing statements recite that the lease schedule was a "true lease." Center Capital's purchase order recites that Northern, as vendor, is to ship the machine directly to Miles.

We agree with the plaintiff that she is not bound by the disclaimer of warranties appearing in the lease, see *Ferragamo* v. *Massachusetts Bay Transp. Authy.*, 395 Mass. 581, 590 (1985), and we agree that the absence of privity between the plaintiff and Center Capital does not bar her action against Center Capital. See G. L. c. 106, § 2-318, as amended by St. 1973, c. 750, § 1; *Back* v. *Wickes Corp.*, 375 Mass. 633, 639 (1978). Indeed, § 2-318 makes it abundantly clear that an action may be brought against a "lessor" to recover damages for breach of an implied warranty "if the plaintiff was a person whom the manufacturer, seller, *lessor*, or supplier might reasonably have expected to use, consume or be affected by the goods" (emphasis added).

On its face, § 2-318 suggests that the plaintiff — an employee of Miles and a foreseeable user of the machine — may maintain her action against Center Capital as the lessor of the allegedly defective machine. See the Uniform Laws Comment 2 to the Uniform Commercial Code § 2-318 (Lexis 1998) ("Implicit in the section is that any beneficiary of a warranty may bring a direct action for breach of warranty against the seller[5] whose warranty extends to him"); *Hoffman* v. *Howmedica, Inc.*, 373 Mass. 32, 34-35 (1977). Nevertheless, the undecided issue is whether the "lessor" referred to in § 2-318 includes a party whose sole function is to finance a lease transaction, and thereby becomes what we have referred to as the "finance lessor."[6]

There are sound reasons for not recognizing the plaintiff's

---

[5]The comment predates the addition of "lessor[s]" to § 2-318, by St. 1973, c. 750, § 1.

[6]Contrary to the defendant's suggestion, *Patriot Gen. Life Ins. Co.* v. *CFC Inv. Co.*, *supra*, does not determine the outcome in this case. In *Patriot* we

claim against Center Capital. The document signed by Miles created a security interest in favor of Center Capital; it was not a "commercial lease." Compare *Back* v. *Wickes Corp.*, 375 Mass. at 639 ("The Legislature has sanctioned the judicial extension of warranty liability, in a proper case, to nonsales transactions such as commercial leases").

A security interest is defined in G. L. c. 106, § 1-201(37), as amended by St. 1979, c. 512, § 3, as follows: " 'Security interest' means an interest in personal property or fixtures which secures payment or performance of an obligation. . . . Whether a lease is intended as security is to be determined by the facts of each case; however, . . . (b) an agreement that upon compliance with the terms of the lease the lessee shall become or has the option to become the owner of the property for no additional consideration or for a nominal consideration does make the lease one intended for security."

The lease in this case falls within the definition of a "security interest" rather than a "lease." Foremost is the fact that the terms of the lease, and the circumstances surrounding its execution, reveal only a financing transaction between Center Capital and Miles. It is undisputed that Center Capital did not select, manufacture, or supply the machine, compare G. L. c. 106, § 2A-103(1)(*g*)(i), quoted in note 8, *infra*; the "lease" in this case is non-cancelable, there is an express disclaimer in favor of Center Capital of all liability for "any matter whatsoever," the lessee is unconditionally bound to pay the monthly rent in any and every event, and at the termination of the lease, the lessee *must* pay the nominal amount of $1.00 and acquire the machine. To this we add that Center Capital saw to it that financing statements under the Uniform Commercial Code were duly filed.

We conclude, as matter of law, that the "lease" in this controversy created a security interest in favor of Center Capital,

held that a breach by the supplier of defective equipment did not excuse the lessee from making lease payments to the finance lessor unless the equipment lease provided otherwise; the finance lessor was entitled to the entire unpaid balance of the lease. Our explanation for this result, however, does bear on the issues in this case: "[T]he weight of authority is that the consideration which flows from the financing lessor is money, not a functioning product." 11 Mass. App. Ct. at 862. See also the dictum at 863 n.7 ("In the finance-lessor context the courts find no implied warranty of merchantability because the lessor is not a merchant . . .").

and that Center Capital was a finance lessor,[7] see *Patriot Gen. Life Ins. Co.* v. *CFC Inv. Co.*, 11 Mass. App. Ct. 857, 861-863 (1981), not a "lessor" within the meaning of § 2-318.[8,9]

The weight of authority elsewhere supports the conclusion we have reached — that a finance lessor, whose sole function is to provide funds to the buyer for the purchase of the equipment and who has no connection — as manufacturer, seller, or supplier of the equipment — cannot be held to the strict liability that flows from an implied warranty. See *Cole* v. *Elliott Equip. Corp.*, 653 F.2d 1031, 1034 (5th Cir. 1981) (applying § 402A of the Restatement of Torts [Second][10] under Texas law, and

---

[7]The plaintiff, without citation to authority, argues that whether Center Capital was a finance lessor is a question of fact, defeating summary judgment for the defendant. We disagree. Based on undisputed facts regarding this transaction, we hold that Center Capital was a finance lessor as matter of law.

[8]See now G. L. c. 106, § 2A-101 through § 2A-532, added by St. 1996, c. 377, § 2, which deal exclusively and comprehensively with leases. In describing the availability of the implied warranty of merchantability and the implied warranty of fitness for a particular purpose, as set forth in §§ 2A-212 and 2A-213, a "finance lease" is excluded from the operation of each section. A "finance lease" is defined in G. L. c. 106, § 2A-103(1)(*g*), as follows: "a lease with respect to which: (i) the lessor does not select, manufacture, or supply the goods; (ii) the lessor acquires the goods or the right to possession and use of the goods in connection with the lease, and (iii) . . . (C) the lessee, before signing the lease contract, receives an accurate and complete statement designating the promises and warranties, and any disclaimers of warranties . . . ." Article 2A ";supersedes all prior legislation dealing with leases . . . ." See the Uniform Laws Comment 1 to the Uniform Commercial Code § 2A-104 (Lexis 1998). However, article 2A, having been enacted in 1996 — long after the lease was signed and after the plaintiff was injured in 1992 — does not govern this case. See *Thayer* v. *Pittsburgh-Corning Corp.*, 45 Mass. App. Ct. 435, 439 (1998). Absent unequivocal direction requiring retroactivity, civil statutes which affect substantive rights are commonly treated as operating prospectively. See *Hanscom* v. *Malden & Melrose Gas Light Co.*, 220 Mass. 1, 3 (1914); *Hoffman* v. *Howmedica, Inc.*, 373 Mass. at 36. Neither party relies on article 2A, but the result would not change for the reasons just stated.

[9]In the business context of a finance lease, Center Capital is a "financing agency," see G. L. c. 106, § 2-104(2) ("financing agency" includes an entity which "intervenes between persons who are in the position of seller and buyer in respect to the goods"), not a "merchant," see G. L. c. 106, § 2-104(1) (a merchant means one "who deals in goods of the kind . . . involved in the transaction . . ."). See also note 6, *supra*. Only a merchant, as defined, is held to the warranty of merchantability, see G. L. c. 106, § 2-314.

[10]"[T]he Massachusetts law of warranty [is] congruent in nearly all respects with the principles expressed in Restatement (Second) of Torts § 402A (1965)." *Back* v. *Wickes Corp.*, 375 Mass. at 640.

holding that strict liability does "not apply when the lessor is not marketing or supplying, but is merely a financier whose collateral is the product"); *Abco Metals Corp.* v. *Equico Lessors, Inc.*, 721 F.2d 583, 585 (7th Cir. 1983) (a finance lessor whose activities are unrelated to production or marketing and therefore is incapable of "preventing a defective product from entering the stream of commerce . . . . is too remote to give rise to strict products liability under Illinois law"); *Wright* v. *Newman,* 735 F.2d 1073, 1078 (8th Cir. 1984) (under Missouri law, "[t]he focus is . . . on whether the commercial entity is in the chain of distribution that provides a product to the consumer. Finance companies have the merely tangential function of providing money to make the purchase of a product possible," and may not be held strictly liable under a finance lease); *Bickram* v. *Case I.H.*, 712 F. Supp. 18, 22 (E.D.N.Y. 1989) (finance lessor not subject to strict liability for defective equipment because the lessor "is not in the business of manufacturing, selling, or renting backhoes; it simply provides funds to permit investments," and therefore is not liable to the injured employee of the finance lessee); *Dominquez Mojica* v. *Citibank, N.A.*, 830 F. Supp. 668, 672 (D.P.R. 1993), quoting from *Nath* v. *National Equip. Leasing Corp.*, 282 Pa. Super. 142, 157 (1980) (finance lessor not subject to strict liability because, inter alia, "the lessee is in a far better position 'to detect and prevent use of a defective product than is the finance lessor, for it is the lessee who selects the product, takes actual possession of it, maintains it, and in general has expertise with respect to it' ").

Additional cases are collected in Annot., Products Liability: Application of Strict Liability in Tort Doctrine to Agency Merely Financing Sale or Lease-Purchase of Personal Property, 28 A.L.R.4th 326 (1984).

There was no error; Center Capital was entitled to judgment in its favor.

*Judgment affirmed.*