Winslow, J.
The defendants, lessees of a Risograph model 3750, with console, computer interface and four color drums used for magazine production (the “equipment”), resisted the plaintiff financing lessor’s summary judgment motion for overdue lease payments on the grounds that the equipment had ceased properly to function. The defendants asserted that the equipment lessor, not a party to this action, had breached an agreement to maintain the equipment in good working order and that the financing lessor should stand in the shoes of the equipment lessor. A justice of the Orleans District Court awarded summary judgment in favor of the financing lessor and the defendants appeal. Under established Massachusetts law, the sins of an equipment lessor for defective equipment cannot be visited upon a financing lessor and the motion for summary judgment properly was allowed. The judgment is affirmed.
The agreed upon statement of the case, together with undisputed facts described in the affidavits of the parties incorporated within the statement, reveal that the defendants, Hit Publications d/b/a Portfolio Magazine and John Maguire[4] (collectively “Hit”), leased the equipment from Riso Products of Boston (“Riso”) at a rate of $600 monthly for 60 months with an option to purchase the equipment for $1.00 at the end of the lease term. The lease included a handwritten notation “$600 monthly min[imum] cost per copy plan” which, according to Hit, was represented by Riso’s sales representative as meaning that Riso would provide free maintenance of the equipment for up to the first 300,000 copies per month of the lease. Hit claims reliance on this representation which, for purposes of the summary judgment motion, is taken as true. The lease, dated May 22,1995, also provided in pertinent part as follows:
3. WARRANTY: LESSEE ACKNOWLEDGES (a) THAT THE EQUIPMENT HAS BEEN SELECTED BY LESSEE, (b) THAT LESSEE RELEASES THE EQUIPMENT ‘AS IS’ AND (c) THAT LESSOR MAKES NO REPRESENTATION OR WARRANTY OF ANY KIND. ... ANY CLAIMS RELATIVE TO THE EQUIPMENT SHALL BE MAKE [sic] *12 SOLELY AGAINST THE MANUFACTURER OR OTHER EXPRESS WARRANTOR, AND NOTHING HEREIN CONTAINED SHALL BE CONSTRUED AS DEPRIVING THE LESSEE OF WHATEVER RIGHTS, IF ANY, LESSSEE [sic] MAY HAVE AGAINST SUCH PARTY.
6. ASSIGNMENT:... In no event shall any Assignee of Lessor be obligated to perform any duty, covenant, condition or promise under the Lease.
17. RETURN OF EQUIPMENT: Upon lawful termination of this Lease or upon Lessee’s default, Lessee, at its own expense, shall... transport the Equipment to Lessor or to a location designated by Lessor to receive the Equipment.... In the event Lessor fails to return the Equipment due to ... (3) default under this Lease, then Lessor may continue to invoice Lessee on a monthly basis at the monthly Lease payment until the Equipment is returned. Lessee shall promptly pay all invoices hereunder. (Emphasis in original).
On or about March 14,1989, Riso had assigned its rights under the Lease to Aloha Leasing, a Division of the Bennett Funding Group. The plaintiff, Richard C. Breeden, is the trustee in bankruptcy for Aloha and its parent corporation (“Aloha”). Aloha did not manufacture or sell the equipment Aloha acted solely as a financing lessor, paying for the equipment to enable Riso to deliver the equipment to Hit Hit still is in possession of the equipment
“Tax and accounting considerations have caused a considerable burgeoning in the volume of equipment leasing. Coogan, “Leases of Equipment and Some Other Unconventional Security Devices: An Analysis of UCC Section 1-201(37) and Article 9,’ 1973 Duke L. Rev. 909. Reisman, Drafting and Negotiating the Equipment Lease,’ in Equipment Leasing-Leveraged Leasing 1, 4-7 (Fritch & Reisman ed. 1977). Commentators have categorized equipment lessors as merchant-lessors, who deal in goods and hold themselves out as having specialized knowledge about the design, operation and repair of the chattel leased, and finance-lessors, whose service is to provide funds and who are not merchants. Carlin, Troduct Liability for the Equipment Lessor? Merchant-Lessor Versus Finance-Lessor/ in Equipment Leasing-Leveraged Leasing 565, 566 (Fritch & Reisman ed. 1977).” Patriot General Life Ins. Co. v. CFC Inv. Co., 11 Mass. App. Ct. 857, 860-861 (1981). In the instant case, Riso undertook to service the equipment; Aloha provided money only and disclaimed any responsibility for the working of the product It is apparent that Aloha’s status was that of a finance-lessor. See Holmes Packaging Mach. Corp. v. Bingham, 252 Cal. App. 2d 862, 873-874, 60 Cal. Rptr. 769 (1967); All-States Leasing Co. v. Ochs, 42 Or. App. 319, 335-336, 600 P.2d 899 (1979).
“When the commercial context has been, as here, a financing lease, the weight of authority is that the consideration which flows from the financing lessor is money, not a functioning product Accordingly a breach by the supplier of the equipment does not excuse the lessee from making lease payments to the finance-lessor, unless the equipment lease otherwise provides. Where, as in many lease documents with a finance-lessor (and in the instant case), there is an express disclaimer of liability for malfunctioning equipment, the position of the finance-lessor is that much stronger.” Patriot General Life Ins. Co. v. CFC Inv. Co., 11 Mass. App. Ct. 857, 862-863 (1981) (citations omitted). “[A] finance lessor, whose sole function is to provide funds to the buyer for the purchase of the equipment and who has no connection — as manufacturer, seller, or supplier of the equipment — cannot be held to the strict liability that flows from an implied warranty.... Additional cases are collected in Annot. “Products Liability Application of Strict Liability in Tort Doctrine to Agency Merely Financing Sale or Lease-Purchase of Personal Prop *13 erly,’ 28 A.L.R.4th 326 (1984).” Draleau v. Center Capital Corp., 49 Mass. App. Ct. 783, 787-788 (2000).
“We look to G.L.c. 106, §§9-102 and 1-201(37), to determine whether a contract, characterized by the parties as a lease, is a ‘true lease’ or a security agreement Article 9 (G.L.c. 106, §§9-101 et seq.) applies, except as otherwise provided, to ‘any transaction (regardless of its form) which is intended to create a security interest in personal property or fixtures. ...’ G.L.c. 106, §9-102(1) (a), as inserted by St 1957, c. 765, §1. Section 9-102(2) provides that art 9 applies to ‘security interests created by contract including... [a] lease... intended as security.’ General Laws c. 106, §9-102(2) as inserted by St 1957, c. 765, §1. The definition of a security agreement is contained in G.L.c. 106, §1-201(37), as inserted by St 1957, c. 765, §1, which provides in relevant part Whether a lease is intended as security is to be determined by the facts of each case; however... (b) an agreement that upon compliance with tiie terms of the lease the lessee shall become or has the option to become the owner of the property for no additional consideration or for a nominal consideration does make the lease one intended for security’” Carlson v. Giacchetti, 35 Mass. App. Ct. 57, 59 (1993). Here, Hit had the option at the end of the lease term to purchase the equipment for nominal consideration. Although denominated as a lease, the contract between Riso and Hit which was assigned to Aloha created, as ruled by the motion judge, a “secured transaction within the ambit of M.G.L.c. 106, §9-102 (b) ... and is not defeated by a claim that the equipment was defective.”
In the circumstances, based on the undisputed facts, any contract and warranty claims which Hit may have against Riso cannot be asserted against Aloha. Hit is responsible for the outstanding lease payments sought by Aloha Accordingly, summary judgment properly entered in favor of Aloha and the judgment is affirmed.
So ordered.

 The individual defendant, John J. Maguire, signed the lease as guarantor of all stuns due under the Lease.